# Richmond.

## PIEDMONT MT. AIRY GUANO COMPANY v. F. F. BUCHANAN.

### February 25, 1926.

### Absent, Christian, J.

1. AGENCY—*Parol Agreement between Agent of Plaintiff and Defendant— Conflicting Evidence—Question for Jury.*—The instant case was an action by plaintiff against defendant to recover the proceeds of sales of fertilizer by defendant for plaintiff. On the question of whether or not there was a parol agreement between the agent of plaintiff and defendant to the effect that defendant was to receive $1.00 per ton on all fertilizer sold in his territory, or while defendant and the agent of plaintiff were together; and of whether certain sales came within the terms of that agreement, the evidence was conflicting.

   *Held:* That these questions were for the jury; and the jury having found in the favor of the defendant upon these issues, and there being sufficient evidence to support the findings, the trial court was right in refusing to set aside the verdict.

2. AGENCY—*Ratification of Agent's Act by Principal—Case at Bar.*—In the instant case, defendant and plaintiff entered into a contract under which defendant was to sell the fertilizers of plaintiff for certain commissions. This contract contained a clause to the effect that all oral representations and agreements were merged therein and that the contract should not be in force nor subsequently modified until approved in writing at the office of the company. Defendant claimed that after the execution of this contract the general agent of plaintiff entered into a parol agreement with him by which his compensation for sales was changed. Plaintiff claimed that under the contract the general agent was without authority to make a parol agreement altering or modifying the contract with respect to defendant's compensation.

   *Held:* That the question of the general agent's authority was immaterial as it clearly appeared that plaintiff subsequently ratified the act of its general agent by which the defendant's compensation was changed.

3. PRINCIPAL AND AGENT—*Ratification of Agent's Act—Letter not Ques-*

*tioning Authority of Agent to Enter Into a Certain Contract but Denying that he Did so.*—In the instant case defendant claimed that the agent of plaintiff had entered into a certain agreement with him. Plaintiff claimed that the agent had no authority to enter into such an agreement. A letter of plaintiff was introduced in evidence in which the only question raised by plaintiff was whether the agent actually made the agreement with defendant. The letter did not question the authority of the agent to make the agreement under the circumstances, nor did it appear that at any time prior or subsequent to the writing of this letter did plaintiff undertake to deny the agent's authority to make the agreement.

*Held:* That plaintiff impliedly, if not expressly, recognized the authority of its agent to make the agreement in question and thus ratified the agent's actions.

4. AGENCY—*Ratification—Express or Implied.*—It is settled doctrine that a principal may ratify the voidable acts of his agent, and such ratification may be express or implied. And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety.

5. AGENCY—*Ratification—Neglects—Prompt Disavowal by Principal—Corporations.*—The law is well settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; and the maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and is equally to be presumed from the absence of dissent.

6. PAROL EVIDENCE—*Subsequent Parol Agreement.*—The parol evidence rule applies to verbal agreements made prior to or contemporaneously with the execution of a simple written contract, but has no application to subsequent parol agreements between the parties.

7. PAROL EVIDENCE—*Subsequent Parol Agreement—Acts of 1920, Chapter 257, Code of 1924, Section 5562A.*—The provisions of Acts of 1920, chapter 257, page 362 (Code of 1924, section 5562A), in regard to the size of type to be used in certain contracts, does not affect the rule as to the validity of subsequent parol agreements between the parties. The plain purpose of that act was to change the common law rule as to contemporaneous parol agreements altering and modifying contracts of the particular description therein mentioned, which are not printed or written in the manner and form required by the act.

8. APPEAL AND ERROR—*Bill of Exceptions.*—In the instant case appellant assigned as error that the court refused to admit proper testimony on behalf of the plaintiff. There was no bill of exceptions or certifi-

cate of the judge in the record embracing the rulings complained of, but even if the evidence excluded as pointed out in the petition had been properly presented in a bill of exceptions, the objection to the exclusion of the said evidence was without merit.

9. APPEAL AND ERROR—*Bill of Exceptions—Sufficiency of Record.—Case at Bar.*—Under an assignment of all other errors apparent on the face of the record, appellant pointed out in its petition certain comments of the trial judge which he alleged might have influenced the jury. There was not only no bill of exceptions as to these alleged errors, but the stenographer's notes of the evidence failed to show any exception taken to them by appellant. Even though the comments of the judge constituted reversible error—which in the opinion of the appellate court they did not—the record being insufficient to bring them up, they could not be reviewed by the appellate court.

Error to a judgment of the Circuit Court of Northampton county, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Louis S. Sacks,* for the plaintiff in error.

*T. H. Nottingham, S. James Turlington,* and *James E. Heath,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

In January, 1922, the plaintiff in error, Piedmont Mt. Airy Guano Company a manufacturer of commercial fertilizers, with its principal office in Baltimore, Md., through its general agent, G. H. Bundick, entered into a contract with F. F. Buchanan, the defendant in error, a resident of Northampton county, Va., appointing said Buchanan its agent for the sale of said company's fertilizers on commission. The contract, which was in writing and was only signed by Buchanan, and by Bundick in behalf of the company, contains various

terms and conditions, including specified prices for the several brands of fertilizers manufactured by the company, among them being "Gold Rod" at $40.00 per ton, less seven per cent discount; settlement to be made in cash or by note not later than July 15, 1922. The contract concludes with the following paragraph:

"All oral representations and agreements are merged herein and this contract shall not be in force nor be subsequently modified until approved in writing at the office of the company."

Buchanan subsequently ordered through Bundick ninety tons of "Gold Rod" brand for divers parties, which was duly shipped by the company, and Buchanan billed for the goods at $40.00 per ton, amounting to a total of $3,600.00. On August 24, 1922, Buchanan sent the company a check for $2,444.30, accompanied by a statement claiming credit for the seven per cent discount provided by the terms of the written contract, and also claiming that, under the terms of a parol agreement entered into between H. C. Bundick, the company's general agent, and himself, after the written contract was executed, he was entitled to a rebate of $1.00 per ton on the ninety tons of fertilizer for which he was charged, and a like rebate or commission on seventy-five tons shipped by the company to one W. J. Leatherbury, and on 745 tons shipped to one H. P. James, Jr. The fertilizer company admitted that Buchanan was entitled to a credit of seven per cent on the $2,444.30 which he had paid on the account, but refused to allow the discount on the balance due on the account and the $1.00 per ton rebate which Buchanan claimed.

Some effort to settle the dispute was made by the parties, which, having failed, the Piedmont Mt. Airy Guano Company brought this action against Buchanan to

recover the amount in controversy, same being $984.60, with interest thereon from August 15, 1922.   Upon the trial of the case in the court below the jury allowed Buchanan's claim and found a verdict in his favor, upon which judgment was entered accordingly; whereupon Piedmont Mt. Airy Guano Company applied for and obtained a writ of error to said judgment, which brings it before this court for review.

The first assignment of error relates to the refusal of the trial court to set aside the verdict of the jury as contrary to the law and the evidence, and it is argued in support of this assignment that there is no evidence to show that the defendant in error is entitled to a rebate or commission of $1.00 per ton on the fertilizer sold Leatherbury and James.   It was testified by the defendant in error that sometime after the written contract was executed, Bundick proposed to him that "in order to sell fertilizer and get it established in the community, if I would waive the seven per cent discount he would allow me $1.00 per ton on all goods that he and I sold while we were together."   That in accordance with this proposition he agreed to waive the seven per cent discount which was to be his commission, and gave the farmers to whom he sold fertilizers the benefit of it, charging them only $37.20 per ton for "Golden Rod," which was the selling price fixed by the written contract, less the seven per cent discount.   His testimony on this subject is corroborated by several farmer witnesses to whom Bundick and defendant, acting together, sold or attempted to sell fertilizer, and also by F. D. Martin, a railroad station agent, who testified that in the early spring of 1922, he heard a conversation in his office between Bundick and the defendant as to the sale of fertilizers and the commission defendant was to receive, and said parties "agreed that

Mr. Buchanan was to receive $1.00 per ton for all goods sold in his territory." There was also evidence going to show that defendant took Bundick around the country and to divers prominent points in the county in his automobile, for the purpose of interviewing prospective buyers and selling plaintiff's goods, and, with that object in view, he brought about the meetings between Bundick and Leatherbury, and Bundick and James, respectively, which resulted in the sales made to those buyers by or through Bundick, and was therefore the procuring cause in those transactions. Bundick admitted in his testimony that Buchanan took him around to quite a number of places in the county, for the purpose of selling fertilizers, and that on all the goods Bundick sold himself he was to receive $1.00 a ton and seven per cent as commissions, but denied that he had agreed to allow defendant $1.00 per ton on any other sales.

His evidence on this point was summed up in the following statements:

"I sold to Mr. James out and out and to Mr. Leatherbury out and out. The goods were shipped and they got it out themselves."

"I recognized him" (meaning Buchanan) "as my agent in helping me out on small lots, but if any man wanted a car load I sold him myself."

[1] The evidence thus being in conflict, the question of whether or not there was a parol agreement between Bundick and Buchanan to the effect that Buchanan was to receive $1.00 per ton on all fertilizer sold in his territory, or while they were together; and of whether or not the sales to Leatherbury and James came within the terms of that agreement, if found to exist, were questions exclusively for the jury to decide under all the facts and circumstances of the case. *Smythe Bros.,*

*et als.* v. *Beresford*, 128 Va. 137, 104 S. E. 371. The jury having found in favor of the defendant upon these issues and there being sufficient evidence in the record to support those findings, the trial court was plainly right in refusing to set aside their verdict upon the ground assigned, as above stated.

[2] It is further contended that, under the provisions of the last paragraph of the written contract, Bundick was without authority to make a parol agreement with Buchanan altering or modifying the terms of said contract with respect to the latter's commissions or compensation, without the approval in writing of the plaintiff company.

Considering the record before us this question does not seem to be material, for even if it be conceded that Bundick was without authority to change the written contract, to the extent of making a new agreement in regard to Buchanan's compensation without first obtaining his company's approval, it clearly appears from the evidence in the case that the plaintiff subsequently ratified Bundick's act in so doing by the following letter:

"BALTIMORE, MD., *January 17, 1923.*
"MR. F. F. BUCHANAN,
　　*Machipongo, Va.*
"DEAR SIR:

"Yours of the 12th received inclosing letter of the same date signed by R. L. Ailworth, of Eastville, both of which have been read very carefully, but these letters do not in any way clarify the situation. The point in dispute seems to be whether or not Bundick made an agreement with you to the effect that you would receive your commission on the sales that James and Leatherbury made. You stated when last in this office that in the presence of Mr. Ailworth, while Mr.

Bundick was talking to Mr. James, that you asked Bundick point blank regarding your commissions in this business and that his reply was that you were to receive same just as if you had made these sales. You also stated Mr. Ailworth heard you and would be willing to confirm your statement.

"Mr. Bundick flatly denies he ever made any such agreement with you, and Mr. Ailworth's letter to us does not bear out your statement that he would confirm this agreement, as he distinctly states that he knew nothing regarding any arrangement you made with Mr. Bundick. The last sentence in his letter is as follows:

" 'I knew nothing of the arrangement between Mr. Bundick and you and Mr. Buchanan, but felt certain he, Mr. Buchanan, was getting his commission.'

"We, of course, wish to state that what Mr. Ailworth thought at the time had nothing whatever to do in the matter. The question is if he can confirm statement that Mr. Bundick agreed to give you these commissions, and he states in his letter that he knows nothing regarding arrangements between you.

"Unless you can put your claim in better form it seems to us that it is a clear case of Mr. Bundick's statement against yours, with nothing in writing on either part, and under these conditions there is nothing left for us to do but look to you for payment in full of your account as it now stands on our books.

"In addition to this we have a letter from Mr. James in which he states positively that he did not know you in any way in the fertilizer deal Mr. Bundick made, and that you never mentioned fertilizer to him in any way.

"Yours very truly,

"PIEDMONT MT. AIRY GUANO COMPANY,

"J. G. Levering, *Vice-Pres.*"

[3] There is nothing in this letter tending to show that plaintiff had or intended to repudiate Bundick's act in changing their terms of the written contract in the particular mentioned, but his authority to make the new agreement with defendant was impliedly, if not expressly, recognized. The only question raised by plaintiff in this letter was whether Bundick actually made the agreement with Buchanan. It did not question his *authority* to make it under the circumstances. Nor does it anywhere appear that, at any time prior or subsequent to the writing of this letter, plaintiff undertook to deny Bundick' authority to alter the terms of the original contract as to Buchanan's compensation. Having assumed that position he is bound by it.

[4] It is settled doctrine that a principal may ratify the voidable acts of his agent, and such ratification may be express or implied. And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety. *Southern Amusement Co.* v. *Ferrell-Bledsoe Furniture Co.*, 135 Va. 429, 99 S. E. 716.

And in *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756, Judge Keith quotes with approval from the case of *Keisey* v. *National Bank*, 69 Pa. St. 426, as follows:

[5] " 'The law is well settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; and the maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and is equally to be presumed from the absence of dissent.'

"And in 2 Kent's Com. 616, the law is thus stated: 'It is a very clear and salutary rule in relation to agencies that where the principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them under pretense that they were done without authority, or even contrary to authority.'"

The next assignment of error is as to the action of the court in admitting over plaintiff's objection evidence of the parol agreement between Bundick and defendant herein before referred to, the contention being that such evidence was inadmissible because it varied the terms of the written contract. We are of opinion that this objection is without merit.

[6] The parol evidence rule applies to verbal agreements made prior to or contemporaneously with the execution of a simple written contract, but has no application to subsequent parol agreements between the parties, such as the agreement in question here.

" 'As said in 6 R. C. L., section 298, pages 914-15: It is true that a simple contract completely reduced to writing cannot be contradicted, changed or modified by parol evidence of what was said and done by the parties to it at the time it was made, because the parties agreed to put the contract into writing and to make the writing part and evidence thereof. The very purpose of the writing is to render the agreement more certain and to exclude parol evidence of it. Nevertheless, by the rules of the common law, it is competent for the parties to a simple contract in writing, before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or add to, change, or modify it, or vary or qualify its terms, and thus make a new one. In such case the contract must be proved partly by the written and partly by the subsequent oral contract.

which has thus been incorporated into and made a part of the original one.' " *Warren* v. *Goodrich*, 133 Va. 366, 112 S. E. 687.

[7] Nor do the provisions of chapter 257, Acts of Assembly, 1920, affect the above rule, as contended by counsel for the plaintiff. The plain purpose of that act was to change the common law rule as to contemporaneous parol agreements altering and modifying contracts of the particular description therein mentioned which are not printed or written in the manner and form required by the act.

The next two assignments of error relate to the action of the court in refusing to give the three instructions asked for by the plaintiff, and in giving the one instruction asked for by the defendant. The instructions asked for by the plaintiff and refused are as follows:

"Instruction A. The court instructs the jury that under the terms of the contract in question the said Piedmont Mt. Airy Guano Company is not bound or required to allow or pay the defendant any rebate or profit whatsoever.

"Instruction B. The court instructs the jury that all oral representations and agreements are merged in the written contract, which could not be subsequently modified until approved in writing at the office of the Piedmont Mt. Airy Guano Company, and that if the defendant relies upon a subsequent modification of said contract, the burden shifts upon him to prove by a preponderance of the testimony that such a subsequent modification was approved in writing at the office of the Piedmont Mt. Airy Guano Company. And that parol contemporaneous evidence is inadmissible to contradict or vary the terms of the written instrument.

"Instruction C. The court instructs the jury that if they believe from the evidence that the defendant,

F. F. Buchanan, had an agent's contract with the plaintiff for the handling of its fertilizers for the spring season of 1922, and that no particular or exclusive territory for the sale of said fertilizer was mentioned in said contract, and that the plaintiff made similar contracts with W. J. Leatherbury and H. P. James, Jr., respectively, for the like sale of fertilizer for said spring of 1922, then the defendant, F. F. Buchanan, is not entitled to any profits or commissions on the fertilizer handled by the said W. J. Leatherbury and H. P. James, Jr., respectively, during said season under their contracts."

The instruction given for the defendant over plaintiff's objection reads as follows:

"Instruction 1. The court instructs the jury that if they believe from the evidence that Mr. Bundick, the general agent of the plaintiff, contracted with Mr. Buchanan for sale of fertilizer and that subsequent to the execution of the contract in writing, said general agent entered into with Buchanan a new verbal contract to the. effect that he, Buchanan, should waive his seven per cent commission named in printed contract and receive one dollar per ton rebate on all goods sold by Buchanan or by their joint efforts, and that said general agent was authorized by his principal to enter into a new contract as to the subagent's compensation, and further that the sales to Leatherbury and James were made in the territory wherein Buchanan, under the contract, was authorized to sell fertilizer by reason of said agreement. Then the defendant would be entitled. to said rebate on said sales—even though you may believe the order of James was finally given in Baltimore."

As the identical questions presented by all of these instructions have been disposed of in the consideration of

the preceding assignments of error, we deem it unnecessary to prolong this opinion by a separate discussion of them. We find no error in the rulings of the court in regard to any of the above instructions.

[8] The remaining assignments of error are: (1) That the court refused to admit proper testimony on behalf of the plaintiff, and (2) for all other errors apparent on the face of the record.

We find no bill of exceptions or certificate of the judge in the record, embracing the rulings complained of in these assignments of error, but we have no hesitation in saying, that if the evidence excluded, as pointed out in the petition, had been properly presented in a bill of exceptions, the objection as to the exclusion of said evidence would be without merit.

[9] Under the assignment of all other errors apparent on the face of the record, plaintiff points out in its petition certain comments of the trial judge which he alleges might have influenced the jury, but there is not only no bill of exceptions as to these alleged errors, but the stenographer's notes of the evidence fails to show any exception taken to them by the plaintiff. Even though said comments constituted reversible error—which, in our opinion, they do not—the record being insufficient to bring them up, they cannot be reviewed by this court. *Myers* v. *Commonwealth*, 132 Va. 746, 111 S. E. 463; *Omohundro* v. *Commonwealth*, 138 Va. 854, 121 S. E. 908; *Petherbridge* v. *Princess Anne County*, 136 Va. 54, 116 S. E. 359.

We are of opinion that the judgment of the lower court should be affirmed.

*Affirmed.*