# Richmond

BANK OF OCCOQUAN, INCORPORATED, v. W. V. DAVIS.*

January 15, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

* See *Bank of Occoquan* v. *Bushey*, 156 Va.

644

*Walter Tansill Oliver* and *Thomas H. Lion*, for the plaintiff in error.

*T. E. Didlake*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

W. V. Davis instituted his action against the Bank of Occoquan, Incorporated, for $1,260.00. A verdict was rendered in his favor and judgment entered thereon. The case is now before this court for review upon a writ of error.

Davis, who was a traveling salesman, in 1921 became a depositor in the bank and continued as such until 1926. During this time James M. Barbee was the cashier. The account between Davis and the bank was properly kept in the bank but bank statements were not rendered. Davis verbally authorized Barbee to honor checks not drawn by himself and debit slips were at various times charged to his account. Several withdrawals were made by Barbee

from Davis' account and the money so taken was loaned to the Swan Point Canning Company, a partnership consisting of Barbee and Dr. Hornbaker. Barbee was discharged by the bank on August 11, 1926, and on November 3, 1926, he went to the home of Davis and left with him a note of the Swan Point Canning Company, payable to Davis in six months, for $1,260.00. Davis carried the note to the bank and attempted to discount it, but the bank refused to handle it. After the bank had refused to discount the note, Davis told Brunt, the cashier then employed by the bank, that he would hold the bank responsible for the payment of the note. This occurred on November 3, 1926. Nothing further occurred after that time until April, 1927, when Brunt, the new cashier sent Davis a statement of his account and enclosed with it the several debit slips, which had been charged to his account and which represented the withdrawals made by Barbee, the proceeds of which had been loaned to the Swan Point Canning Company. From April, 1927, the time the statement was sent to Davis, he did nothing until August, 1927, when he made formal demand on the bank, through his attorney, for the money, which had been so withdrawn and loaned by Barbee. Shortly thereafter, this action was brought.

There are several assignments, but in our view of the case it is only necessary to decide whether as a matter of law Davis, in any event, is entitled to recover.

The testimony is brief and there is serious conflict between Davis and Barbee, the former cashier, but in view of the verdict of the jury, it is needless to attempt to reconcile their testimony. For the purpose of what is here stated, we will assume that the testimony of Davis is true, and that he has given the correct version of the transaction.

■ If the transactions which Barbee had with the Swan Point Canning Company were had on behalf of Davis and for his benefit, and were either authorized or ratified by him, then, in no event, is he entitled to recover of the bank.

We find, from the testimony of Davis, that in 1924 he verbally authorized Barbee to withdraw from his bank account $600.00, and to lend it to one Pierce; that he authorized Barbee, in 1922, to withdraw from his bank account $300.00, and to lend it to Carl Davis; that he approved and ratified another loan made in the same manner in 1926, for $100.00, to Edd Hamill; that he verbally authorized Barbee, during 1924 and 1925, to charge to his account more than thirty checks drawn by C. H. Beach, aggregating more than $700.00. These withdrawals were effected by Barbee, by the use of debit slips, which were from time to time, as the money was withdrawn, regularly charged to Davis' account. Davis further testifies that during 1924 and 1925 and a part of 1926, he drew interest from Barbee on a loan of approximately $1,200.00; that the interest was payable semi-annually and that in 1925 Barbee told him he had loaned from his bank account $1,200.00. Davis further testified that he did not know who the borrower was, but that he did not question the loan. He further testified that shortly after Barbee left the bank in 1926, he called upon Brunt, the new cashier, and told him of the $1,200.00 loan and asked Brunt to find the note evidencing this loan, but Brunt could not find it. He told Brunt that he did not know whose note it was, but suspected, however, that it was a note of the Swan Point Canning Company. He further testified that when Barbee brought the Swan Point Canning Company note for $1,260.00 to his home on November 3, 1926, he asked Barbee for security, but Barbee said that the Canning Company had sufficient assets to pay its debts; that he did not report to the bank that Barbee had wrongfully withdrawn his funds, and that he took the note as evidence of the loan. He admits that in April, 1927, an account was rendered him by the bank showing the withdrawals and enclosing the debit slips, which had been charged to

his account and loaned by Barbee to the Canning Company; that he knew the amount of the loan before he received the note in 1926, because he had been drawing six per cent interest on it; and that he had full knowledge of all the facts from April, 1927, but did not make demand on the bank from that time until August, 1927, when his attorney wrote the bank.

■ From his testimony it clearly appears that he constituted Barbee as his agent to charge to his account checks of C. H. Beach; to withdraw from his account funds, and to make loans for him. It also appears that the loan in question had been made for him in 1924, on which he had been drawing interest, and that not until August, 1927, did he make any complaint to the bank that these withdrawals were being charged to his account.

Under such circumstances, as a matter of law, he is not now entitled to recover of the bank for the money loaned by Barbee to the Swan Point Canning Company. The bank was not at fault.

■ The result is that Davis now has a note made by the partnership of the Swan Point Canning Company, payable to himself, on which he can institute his action for the collection of the amount of the loan due him. The bank certainly is not entitled to the note. It is not the holder or the payee, and it has no claim against the Swan Point Canning Company.

■ The acts and conduct of Barbee, who was the agent of Davis, even though he transcended his authority in this particular instance, have been ratified by Davis and he is bound by the contract, which wa ide for his benefit and from which he has been receiving the benefit (receiving interest) since 1924.

■ The conduct of Barbee, in carrying on the irregular transactions detailed in the evidence in this case, cannot be imputed to the bank. The bank had no knowledge of

these things.  The contracts of loans were being made for the benefit of Davis and Barbee, and not for the benefit of the bank.  Under such circumstances the knowledge and conduct of Barbee cannot be imputed to the bank.

In the case of *People's National Bank* v. *Morris*, 152 Va. 814, 148 S. E. 828, 830, this principle is repeated with approval: "The truth is that where an agent, though ostensibly acting in the business of the principal, is really committing a fraud, for his own benefit, he is acting outside the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it."

It may be assumed that the loan in question was not authorized by Davis, yet, when he, with knowledge of the facts, failed or neglected to promptly disavow the acts of Barbee, by which the latter transcended his authority, Davis made Barbee's acts his own.  *Winston* v. *Gordon*, 115 Va., 907, 80 S. E. 756.  In addition to this, Davis began, in 1924, receiving benefits from the contract he now claims was unauthorized.  He received interest on this loan in 1924, 1925 and part of 1926.  A principal, after accepting the benefits of an unauthorized contract made by his agent cannot subsequently repudiate it.

In the case of *Piedmont, etc., Co.* v. *Buchanan*, 146 Va. 617, 131 S. E. 793, 795, it is held:

"It is settled doctrine that a principal may ratify the voidable acts of his agent, and such ratification may be express or implied.  And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety.  *Southern Amusement Co.* v. *Ferrell-Bledsoe Furniture Co.*, 125 Va. 429, 99 S. E. 716."

There is no doubt that Davis had knowledge of the facts.

He knew the loan had been made because he accepted the interest thereon.

The judgment is reversed and the verdict is set aside. Judgment is now rendered for the Bank of Occoquan, Incorporated.

*Reversed.*