PAUL KILBY, SR., ET AL.

V.

CURTIS WAYNE PICKUREL, ET AL.

Record No. 891497

JERRY WAYNE SCRUGGS

V.

CURTIS WAYNE PICKUREL, ET AL.

Record No. 891500

September 21, 1990

Present: All the Justices

*Robert P. Crouch, Jr. (James W. Haskins; Young, Haskins, Mann & Gregory*, on brief), for appellants. (Record No. 891497)

*Philip G. Gardner (Gardner, Gardner & Barrow*, on brief), for appellees. (Record No. 891497)

*George R. Gautsch (Swezey & Gautsch*, on brief), for appellant. (Record No. 891500)

*Philip G. Gardner (Gardner, Gardner & Barrow*, on brief), for appellees. (Record No. 891500)

JUSTICE WHITING delivered the opinion of the Court.

In these consolidated cases, we decide whether the evidence was sufficient to support the trial court's finding that the litigants had settled their pending action. In accordance with established appellate principles, we state the evidence and all reasonable inferences therefrom in the light most favorable to Pickurel, the party who prevailed at trial.

On August 5, 1986, Paul Kilby, Sr. and Christine W. Kilby, his wife (collectively Kilby), conveyed two lots in Martinsville to Curtis Wayne Pickurel and Clara G. Pickurel, his wife (collectively Pickurel). The lots were improved by a house recently constructed by Kilby, and by a brick retaining wall built by Jerry Wayne Scruggs, Jr., a brick mason and independent contractor engaged by Kilby.

The wall collapsed on February 28, 1987. On September 11, 1987, Pickurel filed an action against Kilby alleging breaches of the statutory warranties of Code § 55-70.1(B). On October 13, 1987, Kilby filed a third-party motion for judgment against Scruggs, alleging that if the wall was defective, Scruggs would be liable to Kilby for any damages he was required to pay Pickurel. Issue was joined on the pleadings, and the matter was set for trial on March 1, 1988.

On December 11, 1987, Philip G. Gardner, Pickurel's attorney, wrote James W. Haskins, Kilby's attorney, and R. Reid Young, III, Scruggs' attorney, "to formalize our informal discussions about a possible settlement of this matter." The letter stated that Pickurel would settle the matter if, by December 21, 1987, he received "an agreement executed by Kilby and Scruggs" that they would remove the debris and repair the wall and landscaping by April 1, 1988. Gardner's letter specified that the repairs were to be made in accordance with plans and specifications approved by the Henry County Building Inspection Department.

On December 16, 1987, Young wrote Gardner, with a copy to his client, Jerry Scruggs, stating that

Jerry has indicated he would agree to rebuild the wall if the same materials or whatever other materials you and Jim can agree on would be provided. As you know, this statement was made to you prior in time to your one week deadline . . . given me and Jim [Haskins] and I am confident Mr. Scruggs will stand by that.

Scruggs testified he was aware that Young was sending the letter.

On January 28, 1988, Gardner wrote Young and Haskins indicating that "our efforts to settle the Pickurel matter apparently have failed." Therefore, he suggested that they complete their necessary discovery in order to be ready for the March 1, 1988, trial. Gardner, however, also indicated that his clients were still willing to settle upon the terms previously offered.

On February 4, 1988, Haskins wrote back indicating that Kilby and Scruggs "have agreed to meet the conditions of your settlement offer. . . ." Haskins also asked Gardner to contact him to "discuss the details and timing of rebuilding the wall." Scruggs

saw Young's copy of this letter and did not object to it.* Furthermore, no mention was made of the necessity of a written agreement in any letters from Haskins or Young.

As a result of these letters, the case was not heard on March 1, 1988. On March 7, 1988, Gardner sent Haskins and Young a copy of the Henry County Building Inspector's specifications for rebuilding the wall. In early May 1988, Kilby removed the debris from the collapsed wall. However, neither Kilby nor Scruggs did any further work on the wall.

Unknown to Pickurel until February 1989, Scruggs had asked Kilby to "put this [agreement] in writing." Scruggs testified that this request might have been made after July 5, 1988, when Young wrote to him indicating that he could not "work this thing out" and that he was withdrawing as Scruggs' counsel. On the day he received a copy of Young's hand-delivered letter dated July 5, 1988, Gardner wrote Haskins and Young advising them that Pickurel was still willing to have Kilby and Scruggs do the work if it was done before another mason selected by Pickurel began to replace the wall. Pickurel finally had another mason do the work for $16,000 in September 1988.

On October 25, 1988, Pickurel filed an amended motion for judgment. The fifth count sought damages arising from the failure of Kilby and Scruggs to perform the settlement agreement. On August 11, 1989, by agreement of the parties, the issues raised by the fifth count were tried by the trial court. After hearing evidence, the trial court found that a settlement agreement had been reached and that Pickurel was entitled to recover $16,000.

Kilby and Scruggs appeal. They argue that the evidence is insufficient to show that they had agreed to settle the case. Specifically, Kilby contends that he cannot be bound to the agreement because Scruggs is not bound. Thus, Kilby's defense depends upon the validity of Scruggs' defenses.

■ First, Scruggs claims that Young had no authority to bind him to a settlement agreement. But even if we assume Young initially lacked authority, the existence of a binding agreement may yet be found.

---

* Scruggs' counsel argues that Scruggs may have seen the letter some time after it was written. However, because we view the evidence in the light most favorable to Pickurel, we infer that Young, who received a copy of the letter, showed it to Scruggs shortly after he received it.

■ A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge of the relevant facts, *Dawson* v. *Hotchkiss*, 160 Va. 577, 582, 169 S.E. 564, 565-66 (1933); *Owens* v. *Boyd Land Co.*, 95 Va. 560, 562, 28 S.E. 950, 951 (1898), or, if upon learning of the act, he fails promptly to disavow it, *Bank of Occoquan* v. *Davis*, 155 Va. 642, 648, 156 S.E. 367, 368 (1931); *Winston* v. *Gordon*, 115 Va. 899, 907, 80 S.E. 756, 760 (1914). The evidence supports the finding that Scruggs ratified Young's settlement activities in both these respects. This conclusion is supported by (1) Scruggs' acceptance of those benefits which enabled him to avoid the cost and inconvenience of the March 1, 1988, trial, and (2) Scruggs' failure promptly to disavow Young's authority to act as his agent upon learning of Young's December 16, 1987, letter and Haskins' February 4, 1988, letter.

■ Second, Scruggs contends that his agreement with Pickurel and Kilby was conditioned upon (1) Kilby paying him $1,000 for his work, and (2) execution of a written agreement with Kilby before he did any work. We find no merit in either ground because Young never mentioned either condition in his settlement negotiations with Gardner and Pickurel. Pickurel cannot be bound by any alleged private agreement between Scruggs and Kilby. *See Swann* v. *Insurance Company*, 156 Va. 852, 861, 159 S.E. 192, 195 (1931).

We find no error in the trial court's finding that Scruggs and Kilby were bound by the settlement agreement with Pickurel. Accordingly, the judgment will be

*Affirmed.*