Filed:  September 6, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 00-2087(L)
(CA-99-1424-A)

Carlos V. Perry, Sr., et al.,

Plaintiffs - Appellants,

versus

Richard F. Scruggs, et al.,

Defendants - Appellees.

O R D E R

The court amends its opinion filed August 16, 2001, as follows:

On page 2, section 4, line 1; and page 2, section 5, line 2 -- the references to Judge "Michaels" are corrected to read "Michael."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CARLOS V. PERRY, SR.; JEANETTIE
PERRY,
Plaintiffs-Appellants,

v.

RICHARD F. SCRUGGS; LOWERY M.
LOMAX; GERALD MAPLES; FRANK
HANNING,
Defendants-Appellees.

No. 00-2087

CARLOS V. PERRY, SR.; JEANETTIE
PERRY,
Plaintiffs-Appellees,

v.

RICHARD F. SCRUGGS; LOWERY M.

LOMAX; GERALD MAPLES,
Defendants-Appellants,

and

FRANK HANNING,
Defendant.

No. 00-2092

CARLOS V. PERRY, SR.; JEANETTIE
PERRY,
Plaintiffs-Appellees,

v.

FRANK HANNING,

No. 00-2143

Defendant-Appellant,

and

RICHARD F. SCRUGGS; LOWERY M.
LOMAX; GERALD MAPLES,
Defendants.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-99-1424-A)

Argued: May 7, 2001

Decided: August 16, 2001

Before MICHAEL and GREGORY, Circuit Judges, and
Benson E. LEGG, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Gregory wrote the opinion,
in which Judge Michael and Judge Legg joined.

_____

**COUNSEL**

**ARGUED:** Robert Eric Greenberg, FRIEDLANDER, MISLER,
SLOAN, KLETZKIN & OCHSMAN, P.L.L.C., Washington, D.C.,
for Appellants. William Thomas Freyvogel, ADAMS, PORTER &

2

RADIGAN, LTD., McLean, Virginia; Peter King Stackhouse, WALSH, COLUCCI, STACKHOUSE, EMRICH & LUBELEY, P.C., Arlington, Virginia, for Appellees. **ON BRIEF:** Carlos M. Recio, Washington, D.C., for Appellants. Kenneth S. Mahieu, ADAMS, PORTER & RADIGAN, LTD., McLean, Virginia; Michael L. Murray, WALSH, COLUCCI, STACKHOUSE, EMRICH & LUBELEY, P.C., Arlington, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

GREGORY, Circuit Judge:

Carlos V. Perry, Sr., and Jeanettie Perry ("the Perrys") appeal the district court's order (1) entering judgment as a matter of law in favor of Richard F. Scruggs, Lowery M. Lomax, and Gerald Maples ("the Scruggs Group"); and (2) granting Frank Hanning's motion for entry of judgment in his favor on the question of damages that the Perrys allegedly suffered as a result of Hanning's breach of a real estate contract to purchase the Perry Farm. Finding no reversible error, we affirm substantially on the reasoning of the district court.

I.

On November 24, 1993, Carlos V. Perry, Sr., and Jeanettie Perry ("the Perrys") entered into a real estate agreement ("Original Contract") with Clay Kahler and Franz Hanning to sell a portion of their 435 acre farm in Prince William County, Virginia. The parties entered into the Original Contract shortly after the Walt Disney Company announced that it was planning to develop an American history theme park on adjacent land. Kahler and Hanning agreed to purchase 335 acres of the Perry farm and planned to develop the property by building a commercial/recreational golf course facility.

3

Under the Original Contract, Kahler and Hanning agreed to pay the Perrys a $155,000 non-refundable deposit, one million dollars at closing, royalties from future golf course operations, and to pay off or clear all encumbrances and obligations affecting the entire Perry farm (including the 100 acres retained by the Perrys). Although the parties planned to close no later than May 1, 1994, Kahler and Hanning informed the Perrys in April 1994 that they did not have the financial resources to complete the purchase of the property. Kahler and Hanning subsequently contacted the Scruggs Group, a group of Mississippi attorneys, in an attempt to seek financing.

The Scruggs Group expressed interest in providing Kahler and Hanning with financial backing, subject to the parties making certain substantive changes to the Original Contract. The Scruggs Group retained William H. Casterline to represent its potential interest in the transaction. Casterline negotiated, drafted, and finalized an addendum to the Original Contract ("Addendum"). The Perrys, Kahler, and Hanning executed the Addendum on May 16, 1994; the Scruggs Group was not a party to the Addendum. Upon execution of the Addendum, Kahler and Hanning agreed to make an additional advanced payment of $200,000, which was credited against the one million dollars due at closing.

The record reveals that the Scruggs Group assisted Kahler and Hanning in performing their duties under these agreements, advancing more than $600,000 to be used to satisfy their obligations to the Perrys. This amount included the $200,000 paid to the Perrys upon execution of the Addendum as well as payments on some of the liens against the Perry Farm. Additionally, the Scruggs Group, Kahler, and Hanning entered into negotiations regarding the possible formation of an entity that would assume the Original Contract and purchase the property from the Perrys. On the same day that Kahler and Hanning executed the Addendum, Casterline sent them a Letter of Intent and a draft Limited Partnership Agreement. The Letter of Intent stated that "this letter is to set forth your intent to form a legally recognized business entity in Virginia to protect the interests of the new `financial partners' and to purchase and develop the Perry Farm." Kahler and Hanning countersigned the Letter of Intent and returned it via facsimile to Casterline. The parties ultimately did not, however, form any such partnership, limited liability company or other type of entity.

4

In late September 1994, Disney publicly announced that it would not proceed with its development as planned. Negotiations nonetheless continued through January 1995, and the Perrys, Kahler, and Hanning executed a Second and Third Addendum to the Original Contract, extending the closing date to October 7, 1994, and January 5, 1995, respectively. The Scruggs Group was not a party to either addendum.

Kahler and Hanning failed to close on January 5, and no further extensions of the closing date were granted. Further, they failed to reach any agreement with the Scruggs Group for third-party financing, and no limited partnership or limited liability company was ever formed. The Perrys retained the $155,000 deposit and the $200,000 advanced payment received from Kahler and Hanning upon execution of the Addendum. In August 1995, the Perrys entered into a joint venture agreement and formed a limited liability company with a developer named C. Lewis Waltrip, II, to develop the Perry Farm. The Perrys contributed the entire 435 acres to the development project in exchange for a percentage ownership in the joint venture and Waltrip's promise to satisfy all of the encumbrances on the property. The Perrys were to retain three or four building lots, which they valued at $62,500 each (the price at which Waltrip had an option to purchase the lots), and received $71,000 in payments made during the course of the joint venture. In November 1996, the Perrys sold their interest in the project to Waltrip for the total sum of $1,050,000.

On September 23, 1999, the Perrys filed this action in district court against Hanning and the members of the Scruggs Group, alleging breach of contract against Hanning (Count I); breach of contract against the Scruggs Group (Count II); and breach of contract against the Scruggs Group based on theories of agency (Count III), agency by estoppel (Count IV), partnership by estoppel (Count V), and partnership by ratification (Count VI). On January 27, 2000, the Perrys moved for summary judgment against Hanning on the issue of liability. The Perrys and the Scruggs Group filed cross-motions for summary judgment on the remaining claims. Both the Scruggs Group and Hanning filed motions to strike the Perrys' jury demand.

After a hearing, the district court entered an order on April 27, 2000, granting the motions to strike the Perrys' jury demand, granting

5

the Perrys' motion for summary judgment against Hanning on the issue of liability, and denying the remaining motions for summary judgment.

A four-day trial was held in July 2000. At the conclusion of the Perrys' case-in-chief, Hanning and the Scruggs Group moved to strike the testimony of Dr. Richard Edelman, the Perrys' expert on damages, and moved for judgment in their favor as a matter of law pursuant to Fed. R. Civ. P. 52(c). The court granted the motion to strike, finding that Dr. Edelman's testimony impermissibly relied on hearsay under Fed. R. Evid. 703 and that his analysis was too speculative under Virginia's new business rule. The court also granted the Scruggs Group's Rule 52(c) motion and dismissed its members from the case. Finally, the court entered a final judgment in favor of Hanning on the issue of damages, concluding that the Perrys had not suffered damages and that the royalty payment was not susceptible of reasonable valuation. The Perrys filed a timely notice of appeal. Both the Scruggs Group and Hanning filed cross-appeals.

II.

The Perrys first contend that the district court erred in finding that they suffered no damages as a result of Hanning's breach. We review the district court's calculation of damages for clear error, unless its calculation was influenced by legal error, in which case review is de novo. United States v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 344 (4th Cir. 1996). In calculating damages, Virginia law seeks to put the damaged party "in the same position, as far as money can do it, as he would have been if the contract had been performed." Bryant v. Peckinpaugh, 400 S.E.2d 201, 205 (Va. 1991) (citation omitted). When a buyer breaches an agreement to purchase real property, "the measure of damages ordinarily is the difference between the contract price and the saleable or market value at the time of the breach." Barr v. MacGlothlin, 11 S.E.2d 617, 620 (Va. 1940).

We have thoroughly reviewed the district court's calculations and agree that under either of its two approaches to measuring the fair market value of the property, the Perrys have suffered no damages. Even treating payment of the obligations to clear title as a wash between the Original Contract and Waltrip transaction, using three

6

building lots instead of four, and omitting a disputed $90,000 that the Perrys claim should have been set aside as attorneys' fees and proceeds from the sale of farm equipment, we find no damages. Accordingly, finding no reversible error, we uphold the district court's ultimate conclusion that the Perrys suffered no loss as a result of Hanning's breach.

Specifically, we find that the district court did not abuse its discretion in finding the testimony of the Perrys' expert witness, Dr. Edelman, to be inadmissible. See General Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997) (stating standard of review). First, Dr. Edelman relied on hearsay, basing his opinions on estimates provided by the manager of the golf course. The Perrys did not call witnesses to furnish the underlying facts for Dr. Edelman's calculations and made no alternative showing that the underlying facts or data were of a type reasonably relied on by other experts in the field as required by Fed. R. Evid. 703. See Wilder Enters., Inc. v. Allied Artists Pictures Corp., 632 F.2d 1135, 1143 (4th Cir. 1980). We find that the district court properly excluded Dr. Edelman's testimony on this ground.

Second, we agree with the district court that Dr. Edelman's estimates are impermissibly speculative. In order to arrive at his conclusions, Dr. Edelman had to make three key numerical findings: (a) the royalty per round of golf; (b) the number of rounds to be played; and (c) the Perrys' actuarial lifetime. Dr. Edelman made several assumptions in making these findings. He assumed that the golf course would continue for the Perrys' lifetime; that the royalty would increase by twelve percent in 2000, and parallel the projected increase in the consumer price index ("CPI") thereafter; and that the number of rounds would continue at the estimated 2000 level for the Perrys' lifetime.

Not only were Dr. Edelman's assumptions based on the entirely separate and distinct Waltrip course, we find simply no basis in the record establishing (a) when the Hanning golf course would have been built; (b) whether it would have generated comparable business to the Waltrip course; (c) whether the Waltrip course (upon which Dr. Edelman's figures were based) would sustain its 1999 number of rounds; or (d) whether the golf course patrons would tolerate the projected twelve percent increase in fees in 2000 and future CPI increases. Because these assumptions are speculative and not sup-

7

ported by the record, we conclude that the district court properly excluded Dr. Edelman's testimony on this ground. Tyger Constr. Co. Inc. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994).

Third, we find that the district court did not abuse its discretion in concluding that Virginia's new business rule barred Dr. Edelman's testimony. The rule prohibits measuring anticipated profits from an unestablished business:

> When an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages. But where a new business or enterprise is involved, the rule is not applicable for the reason that such a business is a speculative venture, the successful operation of which depends upon future bargains, the status of the market, and too many other contingencies to furnish a safe-guard in fixing the measure of damages.

Mullen v. Brantley, 195 S.E.2d 696, 699-700 (Va. 1973) (citations omitted). Because we agree with the district court's conclusion that evidence of projected rounds of golf from the Waltrip course is barred by the new business rule, we also uphold its exclusion of Dr. Edelman's testimony on this ground.

We also find that the district court did not err in finding that the Perrys were not entitled to the sum of $60,000 multiplied by their joint life expectancy as an alternative calculation of the royalty portion of the Original Contract. The Original Contract provided that the Perrys were entitled to receive $60,000 annually after July 31, 1996, for "any period of time that the property is not used as a commercial/recreational golf course." We uphold the district court's conclusion that this provision was simply not meant to provide a minimum royalty or designate liquidated damages. Instead, the clause entitles the Perrys to a fixed payment until the golf course contemplated by the Original Contract was operational. Because there is no indication in the record as to whether the golf course would have been completed by July 31, 1996, if the contract had been performed, we

8

uphold the district court's determination that awarding damages in this manner would be impermissibly speculative.

Finally, the Perrys contend that the district court (1) incorrectly valued the building lots retained by them, finding that there were four lots instead of three; and (2) incorrectly included in the amounts received from Waltrip $40,000 that the Perrys had to pay for attorneys' fees in related lien litigation, and $50,000 in farm equipment purchased by Waltrip from the Perrys. We need not address these challenges to the district court's valuation because even assuming arguendo that the district court erroneously included these amounts, any resulting error would be harmless given the net gain to the Perrys as calculated by the court. We therefore uphold the district court's calculation of damages in its entirety.

III.

The next issues raised by the Perrys on appeal involve the district court's order granting the Defendants' Fed. R. Civ. P. 52(c) motion, rejecting the Perrys' arguments that the Scruggs Group was not liable as a joint venturer, partner, partner by estoppel, or by ratification of the real estate sales contract. We review the district court's findings of fact in support of its order granting a Rule 52(c) motion for clear error. Fed. R. Civ. P. 52(a); Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994). We give the trial court's findings of fact great weight, and will only disturb its findings if "`the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Friend v. Leidinger, 588 F.2d 61, 64 (4th Cir. 1978) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1947)).

A.

The Perrys first contend that the district court erred in ruling that there was no principal/agent relationship between the Scruggs Group and Kahler and Hanning. Under Virginia law, "[a]gency has been defined as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." Raney v. Barnes Lumber Corp., 81 S.E.2d 578, 584 (Va. 1954). "Ac-

9

tual control, however, is not the test; it is the right to control which is determinative." Whitfield v. Whittaker Mem'l Hosp., 169 S.E.2d 563, 581 (Va. 1969).

The district court concluded, based on its factual findings, that the Scruggs Group did not exercise sufficient control over Kahler and Hanning such that an agency relationship was established. Finding no clear error, we uphold this conclusion. The Scruggs Group, Kahler, and Hanning all deny the existence of any agency relationship and members of the Perry family testified that neither group made any representations to them that Kahler and Hanning were acting as mere agents. Although the Perrys contend that the Scruggs Group exercised almost complete financial control over the transaction after the Addendum was signed on May 16, 1994, it is clear that any amounts paid or advanced by the Scruggs Group were necessary to keep the potential deal afloat during negotiations. The Scruggs Group never indicated that it intended to undertake liability on the contract and there is no evidence that Kahler and Hanning were not free to reject such financial support. Moreover, Kahler continued to seek investors independent of the Scruggs Group, belying any claim that the Scruggs Group possessed financial control of the transaction.

Based on our review of the record, we find that the district court correctly applied the law of agency and find no clear error in its factual findings. Accordingly, we uphold the court's finding that no agency relationship was established.

B.

The Perrys also contend that the district court erred in finding that there was no partnership agreement between the Scruggs Group and Kahler and Hanning. Although the district court found that the Letter of Intent and a draft partnership agreement constituted an agreement to agree, the Perrys claim that the documents formed an interim partnership agreement that would be amended as necessary.

In determining whether the two groups intended to become partners, the court may look to the terms of any agreements, the conduct of the parties, or the general circumstances surrounding the transaction. Woodson v. Gilmer, 137 S.E.2d 891, 894 (Va. 1964). No one

10

factor is determinative; rather, each case must be assessed upon its own facts and circumstances. <u>Cooper v. Knox</u>, 90 S.E.2d 844, 847 (Va. 1956).

We again find no clear error in the district court's factual findings. As noted by the district court, the parties consistently denied that they ever formed a partnership despite the fact that Hanning stood to benefit from claiming the Scruggs Group as a partner instead of bearing all liability on his own. Although a letter of intent was signed by Hanning and Kahler, the district court found that it merely indicated their intent to form some sort of entity with the Scruggs Group. It was not signed by the Scruggs Group and was essentially an "agreement to agree."

Turning to the actual conduct of the parties, the district court found that the parties acted inconsistently with the existence of a partnership agreement. For example, Kahler testified that the Scruggs Group was trying to identify additional investors and potential partners for the deal. Carlos Perry, Jr. testified that Kahler expressed concern that his interest would become diluted if more partners were to join the deal. Likewise, the record indicates that Kahler and Hanning continued to investigate other means of financing, presumably in case they failed to reach an agreement with the Scruggs Group. If a partnership agreement had indeed been reached, we see no reason why either group would independently continue to seek out additional investors.

Although the Perrys place great weight on the document that they refer to as an "interim partnership agreement", we uphold the district court's determination that the document was merely a preliminary draft of a potential agreement. From the clear language of the letter of intent, it is clear that the parties needed to engage in further negotiation. For example, the letter of intent does not specify what type of entity is being formed; it merely refers to the formation of "a legally recognized business entity" and discusses the advantages and disadvantages of entering into a limited liability company or limited partnership. The letter also refers to the attached agreement as a "draft" and states "an understanding that additional provisions and revisions will be required to produce a final agreement." Finally, we note that the Scruggs Groups never signed either the letter of intent or the draft agreement.

11

Considering the statement of the parties, their written correspon- dence, and their conduct as a whole, we cannot conclude that the dis- trict court erred in finding that there was no partnership agreement between the Scruggs Group and Kahler and Hanning. Accordingly, we uphold the district court's finding on this issue.

C.

The Perrys also contend that the district court erred in determining that the Scruggs Group was not liable based on agency by estoppel or partnership by estoppel. Under Virginia law, a principal is estopped from denying an agency relationship if he represents that a party has authority to act on his behalf and a third party reasonably relies on this representation to its detriment, even if such authority is lacking. Title Ins. Co. v. Howell, 164 S.E. 387, 391 (Va. 1932). Likewise, par- ties are estopped from denying a partnership where they hold them- selves out as partners and a third party reasonably relies on their representation as partners to its detriment. Bonavire v. Wampler, 779 F.2d 1011, 1016 (4th Cir. 1985).

The Perrys' own testimony fails to establish that a representation of agency or partnership was ever made. The attorney representing the Perrys in their lien litigation, Robert Cunningham, testified that he was told that the members of the Scruggs Group were giving "serious consideration" to becoming participants, that they were "likely partici- pants", and that they were in the "decision-making process." Francine Perry testified that Kahler and Hanning informed her that the Scruggs Group was "interested in negotiating a deal." Both Carlos Perry, Sr., and his son testified that they were never told that Hanning and Kahler were acting as agents of the Scruggs Group.

Although Carlos Perry, Jr., testified that Kahler made representa- tions that he and the Scruggs Group were partners, there is no evi- dence that the Scruggs Group was aware of any such representations. Without knowledge of Kahler's alleged statement, we find that there is no basis for a finding of partnership by estoppel and therefore the Scruggs Group had no duty to make a statement disavowing any part- nership arrangement. See generally Hobbs v. Virginia Nat. Bank, 133 S.E. 595 (Va. 1926). Accordingly, we uphold the district court's determination that the Perrys never received any representation of an

12

agency relationship or partnership from the Scruggs Group or Kahler and Hanning, and therefore we find no basis to apply the doctrine of estoppel to this case.[1]

IV.

Finally, the Perrys contend that the district court erred in striking their demand for a jury trial. Prior to trial, both Hanning and the Scruggs Group filed separate motions to strike the Perrys' jury demand pursuant to the terms of the Original Contract. Paragraph 21(d) of the Original Contract between the Perrys, Kahler, and Hanning expressly provided that "Each party hereby waives trial by jury respecting any claim arising from or related to this Agreement." We find that the Perrys are clearly bound by this waiver as to their claims against Hanning because Hanning was a signatory to the Original Contract. The Perrys are also bound by their waiver as to their claims against the Scruggs Group; we agree with the district court's finding that a person may not simultaneously bring a claim under a contract and repudiate a jury waiver clause in the same contract. We therefore find that the district court did not err in striking the Perrys' demand for a jury trial.

V.

Upon review of the parties' briefs and applicable law, and having had the benefit of oral argument, we uphold the district court's judgment and rulings in their entirety. Accordingly, we affirm substan-

_____

[1] We also reject the Perrys' argument that the Scruggs Group was liable under the doctrine of agency by ratification. This doctrine states that "a principal may ratify the voidable acts of his agent, and such ratification may be express or implied. And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety." <u>Bank of Occoquan v. Davis</u>, 156 S.E. 367 (Va. 1931). Because we agree with the district court's finding that there was no evidence that Kahler and Hanning acted on behalf of the Scruggs Group, we find that the doctrine of ratification does not apply.

13

tially on the reasoning of the district court, as stated in its opinions and bench rulings.[2]

AFFIRMED
_____

[2] Based on our disposition, we find it unnecessary to consider the argument raised on cross-appeal by the Appellees, i.e., whether the district court erred in denying their motions for summary judgment based on the liquidated damages clauses in the Original Contract and Addendum.

14