## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

## STEPHANIE B. WEISMAN

Record No. 930382

February 25, 1994

Present: All the Justices

*Jerry K. Jebo (Jebo & Turk,* on briefs), for appellant.
*Thomas W. Papa (Richard F. Gonet; L. Anne Coughenour; Chaplin, Papa & Gonet,* on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, we determine whether the trial court erred in ruling that additional uninsured/underinsured motorist insurance coverage had not been properly rejected as required by Code § 38.2-2202 (formerly Code § 38.1-380.2) and Code § 38.2-2206 (formerly Code § 38.1-381).

Stephanie B. Weisman filed a declaratory judgment proceeding against State Farm Mutual Automobile Insurance Company (State Farm), seeking a ruling that State Farm was obligated to provide her with uninsured/underinsured motorist insurance coverage to the extent of $100,000 under a family automobile insurance policy (the policy) issued by State Farm to Stephanie's parents, Stuart M. Weisman and Anne L. Weisman (collectively, the Weismans). State Farm responded that the additional coverage Stephanie sought had been rejected by the Weismans and, therefore, that the coverage available was limited to $25,000. The trial court ruled that the additional coverage had not been rejected as required by statute and, therefore, that $100,000 in uninsured/underinsured motorist coverage was available to Stephanie. State Farm appeals.

The facts were stipulated by the parties. On December 4, 1989, Stephanie sustained serious injuries when she was struck by either Martha Doyle Woodbury, an underinsured motorist, or a "John Doe" vehicle. Stephanie brought an action against Woodbury and John Doe seeking recovery of $100,000 in compensatory damages and $300,000 in punitive damages.

At the time of the accident, Stephanie was attending college in Blacksburg and her permanent residence was her parents' home in Springfield, Fairfax County. Stephanie was designated as "away at college" under the policy, and, at all times pertinent, she was an "insured." The declaration page of the policy in effect at the time of the accident stated that the policy provided bodily injury liability coverage in the amount of $100,000/$300,000 and uninsured/underinsured motorist coverage in the amount of $25,000/$50,000.

The policy originally was issued by State Farm on September 9, 1979, pursuant to an application dated September 4, 1979. Although the application was signed only by Stuart Weisman, the application and resulting policy carried the names of Stuart and Anne Weisman as the named insureds. The application sought and the resulting policy provided bodily injury liability coverage limits of $100,000/$300,000 and uninsured/underinsured motorist coverage limits of $25,000/$50,000.

Between the time the policy was originally issued and the date of Stephanie's accident, the Weismans maintained their family automobile insurance policy with State Farm. All declaration pages sent to the Weismans during that period contained the same liability coverage limits and uninsured/underinsured motorist coverage limits as were stated in the original declaration. At all times pertinent, Stuart Weisman was the family member who took care of all financial and insurance matters for the family, and Anne Weisman had never met with a State Farm agent.

■ In 1982, the General Assembly amended Code § 38.1-380.2 (now Code § 38.2-2202) and Code § 38.1-381 (now Code § 38.2-2206) to require that insurance companies increase the uninsured motorist coverage limits to equal the liability coverage limits on all policies unless a written rejection of such increased limits was made by the policyholder. Acts 1982, c. 642. This change was effective for all policies issued or renewed on or after January 1, 1983.

Beginning on January 1, 1983, State Farm sent to all its policyholders, along with policy renewal notices, a form containing the message required under Code § 38.2-2202(B) and a rejection form. The Weismans received the message and rejection form with their policy renewal notice prior to their March 9, 1983 renewal date. The statutory message also appeared on each new declaration page sent to the Weismans for policy changes effective January 13, 1984, August 2, 1985, August 26, 1985, July 21, 1986, and September 20, 1986.

■ On August 2, 1985, Stuart Weisman changed a motor vehicle under the policy and, in conjunction with the change, signed a form

stating that he rejected the higher uninsured/underinsured motorist coverage limits. The rejection form Stuart signed reads, in pertinent part, as follows:

> I acknowledge that . . . [State Farm] has given me the opportunity to purchase Uninsured Motorists insurance (including coverage for underinsured motor vehicles) in an amount equal to my motor vehicle bodily injury and property damage liability coverage.

> This is to certify that, having been given such opportunity, I reject such additional uninsured and underinsured motorist insurance coverage, and instead select the limits for each vehicle shown below.

> I understand and agree that this selection will apply to future policy renewals, or on any other policy which extends, changes, supercedes or replaces this policy, unless I make a written request for change to [State Farm].

No forms either applying for insurance coverage or rejecting higher uninsured/underinsured motorist coverage limits were signed by Anne Weisman. State Farm sent all renewal notices and billings to both Stuart and Anne Weisman.

The trial court based its findings of fact upon stipulated facts rather than upon an *ore tenus* hearing. Therefore, the court's findings, although highly persuasive and entitled to great weight, are not binding on appeal. *Johnson v. Insurance Co. of No. America,* 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Nonetheless, the appellate standard of review is firmly established. A trial court's judgment will not be reversed on appeal unless it is plainly wrong or unsupported by the evidence. Code § 8.01-680.

■ Code § 38.2-2206(A) provides that "the insured" must reject the higher uninsured and underinsured coverage by notifying the insurer as provided in Code § 38.2-2202(B). Under Code § 38.2-2206(B), an insured includes every person who becomes a passenger in or permissive driver of a covered vehicle. Therefore, the identity of persons qualifying as insureds under a policy is not static but is indefinite and subject to constant change, and, applying the language of subsection A literally, effective rejection of the higher coverage limits could never be accomplished. In construing a statute, "we presume that the General Assembly does not intend the application of a statute to lead to irrational consequences." *VEPCO v. Citizens,* 222 Va. 866, 869,

284 S.E.2d 613, 615 (1981). Thus, we construe Code § 38.2-2206(A) to require that each *named* insured under an automobile insurance policy reject the higher coverage.

■ In the present case, Anne and Stuart Weisman were the *named* insureds. Therefore, the statute required both Anne and Stuart to reject the higher coverage. Anne, however, did not execute any rejection form.

State Farm contends, nevertheless, that Stuart acted for himself and also as Anne's agent when he signed the rejection form. The trial court rejected this contention, and so do we.

■ Agency is defined as "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Reistroffer v. Person,* 247 Va. 45, 48, 439 S.E.2d 376, 378 (1994); *accord Allen v. Lindstrom,* 237 Va. 489, 496, 379 S.E.2d 450, 454, *cert. denied,* 493 U.S. 849 (1989). An agency relationship is never presumed; to the contrary, the law presumes that a person is acting for himself and not as another's agent. *Allen,* 237 Va. at 496, 379 S.E.2d at 454. Moreover, the party alleging an agency relationship bears the burden of proving it. *Id.* Further, whether an agency relationship exists is a question to be resolved by the fact finder unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents. *Reistroffer,* 247 Va. at 48, 439 S.E.2d at 378; *Drake v. Livesay,* 231 Va. 117, 121, 341 S.E.2d 186, 189 (1986).

■ In the present case, the rejection form that Stuart signed suggests, by its use throughout of the first person, singular pronoun, that he was acting only for himself. Moreover, no facts show that Anne specifically authorized or empowered Stuart to act as her agent. Therefore, State Farm did not prove an express agency.

■ State Farm asserts, nonetheless, that "[b]y [Anne's] failure to make any attempt to contact State Farm regarding the coverages set forth in the policy, she was 'ratifying' the actions of her husband." In order to establish agency by ratification, however, State Farm must prove that Anne had full knowledge of all the facts and that she acted in such a manner as to indicate unmistakably her intention to avail herself of the benefits of the agreement. *Piedmont, etc., Co. v. Buchanan,* 146 Va. 617, 625, 131 S.E. 793, 795 (1926); *accord Kilby v. Pickurel,* 240 Va. 271, 275, 396 S.E.2d 666, 668 (1990). The record, however, does not show that Anne had such knowledge and intent.

In a similar vein, State Farm contends that Anne, by her conduct, acquiesced in and approved of Stuart's actions. To support this con-

tention, State Farm relies upon *Littreal* v. *Howell,* 203 Va. 394, 124 S.E.2d 16 (1962). In *Littreal,* however, this Court found that the wife acquiesced in, consented to, and approved the contract at issue "with full knowledge of the proposal." *Id.* at 397, 124 S.E.2d at 18. In the present case, as previously noted, the record does not show that Anne had "full knowledge" of the transaction or that she acquiesced in or approved Stuart's acts.

In sum, from our review of the record, we cannot say that the trial court's findings are plainly wrong or unsupported by the stipulated facts. We think that Code § 38.2-2206(A) requires a written rejection by all named insureds in an automobile insurance policy. By obtaining a written rejection from each named insured, controversy about the uninsured/underinsured motorist coverage available to an insured will be eliminated. We think the General Assembly intended a "bright-line" rule and that such a rule inures to the benefit of both the insurer and the named insured.

Accordingly, we will affirm the trial court's judgment.

*Affirmed.*