Present:  All the Justices

WILLIAM ATKINSON

v.  Record No. 032037     OPINION BY JUSTICE DONALD W. LEMONS
                                    June 10, 2004
PENSKE LOGISTICS, LLC, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

In this appeal, we consider whether the decision by a single named insured on a business automobile insurance policy to waive uninsured motorist insurance coverage higher than the statutory minimum is binding upon all other named insureds on the policy under Code § 38.2-2206.

I.  Facts and Proceedings Below

On May 19, 2000, William Atkinson ("Atkinson"), an employee of Penske Logistics, Inc., which has since merged with another company and changed its name to Penske Logistics Corp., LLC (collectively, "Penske Logistics"), was operating a tractor-trailer in the course of his employment.  The tractor was owned by Penske Truck Leasing Co., L.P., ("Penske Truck Leasing") but leased to Penske Logistics.  Penske Logistics owned the trailer.  Atkinson was injured in an accident with an unknown operator of a motor vehicle.

At the time of the accident, Penske Logistics and Penske Truck Leasing were named insureds on a motor vehicle liability insurance policy issued by Old Republic Insurance Co. ("Old Republic").  The parties stipulated that the tractor and

trailer involved in the accident were covered under the policy and that Atkinson qualifies as an insured under the policy.

In his "First Amended Motion for Declaratory Judgment," Atkinson sought a declaratory judgment declaring "the extent of coverage each carrier owes . . . determin[ing] the total coverage available, and declar[ing] the priority of payment between the insurance carriers."[1]  He also sought a declaration "that Old Republic is obligated to provide coverage . . . in an amount of its policy limits, under policy ML 14804-06, of $2,000,000.00."[2]  Because the injuries to Atkinson were alleged to have been caused by a "John Doe" unknown driver, the focus of the declaratory judgment action was the availability of uninsured and underinsured motorist ("UM/UIM") coverage.

Old Republic, Penske Logistics, and Penske Truck Leasing (collectively, "Defendants") filed a motion for summary judgment "on the grounds that the named insured, Penske Truck Leasing Co., L.P., et al., effectively rejected the higher [UM/UIM] coverage for bodily injury equal to its full

---

[1] Defendants at trial were Penske Logistics, LLC, Penske Truck Leasing Company, L.P., Old Republic Insurance Company, State Farm Mutual Automobile Insurance Company, Allstate Insurance Company, and Government Employees Insurance Company. The only policy at issue on appeal was issued by Old Republic. Etta Brunell was a plaintiff in the trial court but is not an appellant in this proceeding.

[2] Atkinson alleged that the tractor and the trailer each constitutes a separate "auto" under Old Republic's policy; consequently, the policy limits of $1,000,000 should be doubled.

2

liability coverage of $1,000,000.00 and instead selected [UM/UIM] coverage equal to Virginia's minimum financial responsibility limits of $25,000 per person." In pretrial filings, Atkinson acknowledged that Penske Truck Leasing waived higher UM/UIM coverage limits but maintained that its waiver was ineffective to bind Penske Logistics.

Following a hearing at which the trial court received exhibits and heard testimony from one witness, the trial court issued a letter opinion which was later memorialized in a final decree. The trial court held that Penske Truck Leasing's rejection of higher UM/UIM limits was binding on Penske Logistics because, under Code § 38.2-2206, "rejection of the higher limits by one named insured is binding on all named insureds and all other insureds as defined in § 38.2-2206(B)." Atkinson appeals the adverse judgment of the trial court.

## II. Analysis

Atkinson argues that the trial court erred in three ways. First, he maintains that the trial court "erroneously presumed the existence of an 'agency' relationship between Penske Truck Leasing Co., L.P. and Penske Logistics, Inc. (even though 'agency' was never pled)." Second, he argues that the trial court "should have ruled that Penske Logistics, Inc. was required to execute its own rejection of higher UM[/UIM]

3

limits, and that [Code § 38.2-2206(B)] did not authorize one entity to act for the other."  Third, he asserts that the trial court "erroneously ruled that Penske Logistics, Inc. was not required to receive separate notice from Old Republic of its right to reject higher UM[/UIM] limits" under Code §§ 38.2-2202 and -2206.  The Defendants assign cross-error to the trial court's "ruling that Atkinson could seek a declaratory judgment on issues not specifically pleaded in [his motion] for declaratory judgment."

Because the cross-error, if sustained, would end this appeal, it will be addressed first.  Defendants assert that since Atkinson never alleged in his pleadings that Penske Truck Leasing could not waive higher UM/UIM coverage for Penske Logistics, the trial court erred in addressing the issue at all.  Additionally, Defendants assert that Atkinson did not raise the issue of separate notice to Penske Logistics in his pleadings.  The flaw in Defendants' assignment of cross-error is readily apparent.  Defendants raised the issue of waiver and the subsumed issue of separate notice in their responsive pleadings.  Had they wished a response in the form of a pleading from Atkinson, they could have availed themselves of the provisions of Rule 3:12 which provides:

> If a plea, motion or affirmative defense sets up new matter and contains words expressly requesting a reply, the adverse party shall within twenty-one days file a reply admitting

4

> or denying such new matter. If it does not contain such words, the allegation of new matter shall be taken as denied or avoided without further pleading. All allegations contained in a reply shall be taken as denied or avoided without further pleading.

Atkinson responded to Defendants' defenses in memoranda and argument to the trial court. He was not required to anticipate Defendants' defenses in his initial motion for declaratory judgment. The assignment of cross-error is without merit.

We now consider Atkinson's assignments of error. His first assignment of error is predicated upon a faulty premise. He asserts that the trial court "erroneously presumed the existence of an 'agency' relationship" between Penske Truck Leasing and Penske Logistics, "even though 'agency' was never pled." A review of the trial court's two letter opinions and its final order reveals no mention of agency as a theory underlying the trial court's ruling. It is clear that the trial court based its ruling upon statutory interpretation, not a common law theory of agency. Atkinson's first assignment of error is without merit.

We will consider Atkinson's second and third assignments of error together. He maintains that the trial court erred in holding that Penske Logistics was not required to have separate notice of its right to reject higher UM/UIM coverage and further erred in holding that one named insured's waiver

5

of UM/UIM coverage binds another named insured under the policy.

In 1994, we rendered an opinion in the case of State Farm Mut. Auto. Ins. Co. v. Weisman, 247 Va. 199, 441 S.E.2d 16 (1994). The Weisman case involved a family auto policy listing both husband and wife as named insureds. Both husband and wife received statutory notice pursuant to Code § 38.2-2202(B) informing them of their right to UM/UIM coverage equal to liability coverage and their right to waive such an increase in coverage. A form permitting rejection of the higher coverage was provided for husband and wife. However, only the husband executed the form declining the higher UM/UIM coverage. Id. at 201-02, 441 S.E.2d at 17-18.

At the time Weisman was decided, Code § 38.2-2206(A), referring to UM/UIM coverage, stated in pertinent part:

> Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202.

Code § 38.2-2206(A)(1994). We held that the statutory language then utilized required "that each named insured under an automobile insurance policy" had to reject the higher coverage in order for the lower limits to be in effect. Id. at 202-03, 441 S.E.2d at 18-19.

6

In an obvious reaction to the Weisman decision, the General Assembly, in 1995, amended the statutory language at issue in Code § 38.2-2206(A) to add the provision in effect today:

> Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202. (emphasis added).

Code § 38.2-2206(A)(2002); see also 1995 Va. Acts ch. 189 (adding emphasized language). It is abundantly clear that the General Assembly specifically intended to permit a single named insured to bind other named insureds by its rejection of higher UM/UIM coverage.

Nonetheless, Atkinson argues that because subsection A also states "[t]his rejection of the additional uninsured motorist insurance coverage by any one named insured shall be binding upon all insureds under such policy as defined in subsection B of this section," we must look to subsection B for definitions that somehow restrict or modify the ability of any one named insured to bind other named insureds.

Subsection B of Code § 38.2-2206 states in part:

> "*Insured*" as used in subsections A, D, G, and H of this section means the named insured and, while resident of the same household, the spouse of the named insured, and relatives, wards or foster children of either, while in a motor vehicle or otherwise, and any person who

7

uses the motor vehicle to which the policy
applies, with the expressed or implied consent
of the named insured, and a guest in the motor
vehicle to which the policy applies or the
personal representative of any of the above.

Atkinson asserts that because the definition of "insured"
includes "the named insured" and thereafter refers
specifically to "the spouse of the named insured" and users
"with the expressed or implied consent of the named insured,"
the proper construction of subparagraph A must require
separate rejection by each named insured.  Atkinson's
interpretation is not a reasonable construction of the
statute.  To reach Atkinson's conclusion requires the term
"named insured" to be read as though the word "named" is
simply an adjective modifying the noun "insured."  However,
"named insured," as used in Code § 38.2-2206, is a term of art
with its own definition, separate from the definition of the
term "insured."  A "named insured" is the policyholder.  An
"insured" is simply a party who may be covered under the
policy.  Not all "insureds" are "named insureds."

Where there is more than one named insured, as in this
case, the language of Code § 38.2-2206(A) specifies that "any
one named insured" can waive higher UM/UIM coverage for "all
insureds."  It is clear from subsection A that a single named
insured may waive coverage, regardless of the total number of
named insureds.  The definition of "insured" in Code § 38.2-

8

2206(B) does not alter who may act to waive coverage. Instead, subsection B defines who may be affected by the decision of a single named insured to waive higher UM/UIM coverage. We hold that the trial court did not err in its judgment that Code § 38.2-2206(A) permitted Penske Truck Leasing to waive higher UM/UIM coverage and bind another named insured, Penske Logistics, by its rejection of the higher coverage.

Finally, Atkinson acknowledges that Penske Truck Leasing received notice of the right to purchase higher UM/UIM coverage or reject such coverage; however, he asserts that Penske Logistics did not receive such notice. Accordingly, he argues that the waiver by Penske Truck Leasing could not bind Penske Logistics in the absence of notice to Penske Logistics. What Atkinson fails to realize is that neither Penske Truck Leasing nor Penske Logistics were entitled to notice under the facts of this case.

Code § 38.2-2206(A) refers to required notice under Code § 38.2-2202(B), which further provides in part:

> B. No new policy or original premium notice of insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered unless it contains the following statement printed in boldface type, or unless the statement is attached to the front of or is enclosed with the policy or premium notice:
>
> . . . .

9

> After twenty days, the insurer shall be
> relieved of the obligation imposed by this
> subsection to attach or imprint the foregoing
> statement to any subsequently delivered renewal
> policy, extension certificate, other written
> statement of coverage continuance, or to any
> subsequently mailed premium notice.

The policy in question in this case is a renewal policy.

Notice under Code § 38.2-2202(B) is not applicable to renewal

policies.  GEICO v. Hall, 260 Va. 349, 354-355, 533 S.E.2d

615, 617-618 (2000).

### III.  Conclusion

For the reasons stated, the trial court did not err and

the judgment of the trial court will be affirmed.

Affirmed.

10