2014 COA 135

**Brian K. JOHNSON, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, INC., a Corporation, Defendant–Appellee.**

**Court of Appeals No. 13CA0752**

Colorado Court of Appeals, Div. I.

Announced October 9, 2014

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

The Kofoed Law Firm, LLC, David L. Kofoed, Centennial, Colorado, for Plaintiff–Appellant.

Frank Patterson & Associates, P.C., Franklin Patterson, Brian Kennedy, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by JUDGE BERNARD

¶ 1 The general rule in Colorado is that automobile liability insurance policies must contain coverage for bodily injury damages caused by uninsured or underinsured motorists (UM/UIM). § 10–4–609(1)(a), C.R.S. 2014. The sole exception to this rule is when "the named insured" waives such coverage in writing. *Id.*

¶ 2 This appeal presents the question of what happens when more than one person is listed on the policy as a "named insured," but only one of them waives UM/UIM coverage. Is the named insured who did not waive such coverage bound by the other's waiver in all circumstances? We answer that question "no."

¶ 3 Under the facts of this case, we conclude that the decision of one named insured to waive UM/UIM coverage binds others who are also named insureds on the same policy only if the others expressly authorized such a decision.

¶ 4 Here, the driver and plaintiff, Brian K. Johnson, and his friend, Daphne Satriano, were named insureds on a policy that the defendant insurer, State Farm Mutual Automobile Insurance Company, Inc., had issued.

The friend waived UM/UIM coverage, but the driver did not.

¶ 5 The driver was seriously injured in an accident. The insurer paid him the policy limits of the UM/UIM coverage from a second policy that the friend had on *her* car. But the insurer refused to pay him for any damages subject to UM/UIM coverage under the policy on *his* car.

¶ 6 He sued the insurer. The trial court decided that the friend's waiver of UM/UIM coverage for the policy on the driver's car bound him.

¶ 7 We reverse because we conclude, under the facts of this case, that the insurer did not show that the *driver* expressly waived UM/UIM coverage on his car's policy.

I. Background

A. The Facts

¶ 8 The driver and his wife were contemplating getting a divorce. He needed a place to stay, so the friend allowed him to move in with her in late 2009. As these facts would suggest, they were unrelated adults.

¶ 9 The friend helped the driver to buy a car. When they bought it, the driver's insurance policy covered it. But that policy expired in the summer of 2010.

¶ 10 The driver and the friend agreed that she would call her insurance agent, who represented the insurer, to obtain an insurance policy for the car. As a prelude to this discussion, the friend asked the driver what kind of coverage he had under the policy that had expired. The driver replied that he had "full coverage ... everything."

¶ 11 The friend telephoned her agent's office and obtained an insurance policy from the insurer for the car. The driver was not present during the call.

¶ 12 The policy from the insurer listed both the friend and the driver as "named insured." The friend signed a form waiving UM/UIM coverage. The driver did not sign the form, and he was not aware that the insurer had offered the friend the option to waive such coverage. The next day, the friend called the driver. She told him that

she had "got it done" and that he was "fully covered."

¶ 13 The insurer· mailed a copy of this policy to the friend. Under the heading of "important messages," the policy's declarations page stated that, "[u]nless rejected in writing, [u]ninsured motor vehicle ·coverage is mandatory with bodily injury limits of $25,000 for each person and $50,000 for each accident." The declarations page did not make any other reference to UM/UIM coverage. In other words, the declarations page did not state that the friend had waived UM/UIM coverage, but it also did not state that the policy included such coverage. The rejection form that the friend signed waiving UM/UIM coverage was not included. And the Colorado insurance cards that came with the policy, and which the driver put in his car, did not mention UM/UIM coverage.

¶ 14 Shortly after obtaining this policy, the driver was seriously injured in an accident while driving the car. He was not at fault.

¶ 15 The other driver, who was at fault, was underinsured. With· the consent of the insurer, the driver settled .with the other driver's insurance company for its policy limits.

¶ 16 The driver then filed a claim with the insurer, requesting that the insurer indemnify him for the rest of his damages under the UM/UIM provisions of the policy that covered his car. The insurer rejected the claim. It stated that the policy did not have UM/UIM coverage because the friend had waived it.

¶ 17 (We note that the friend had another automobile insurance policy because the insurer had also issued a policy that covered a car that she owned. This policy *had* UM/UIM coverage. When the friend called her insurance agent to get the policy for the driver's car, the agent told her that the UM/UIM coverage under her other car's policy would cover the driver because he was a member of her household.)

¶ 18 But whether the driver had UM/UIM coverage under the policy on the friend's car does not control the outcome of this appeal. To illustrate this point, we ·observe that (1) the record shows that UM/UIM coverage on the friend's car covered the driver; and ·(2) the insurer paid him the policy limits from that policy. If he had UM/UIM coverage on his car, he would be entitled to "stack" the UM/UIM coverage limits of *both* policies if the limits of one of them did not fully indemnify him for his damages. *See Rivera v. Am. Family Ins. Grp.*, 2012 COA 175, ¶ 17, 292 P.3d 1181.

### B. The Lawsuit

¶ 19 The driver then .filed this lawsuit against the insurer and the friend's insurance agent. He claimed, among other things, that the court should read UM/UIM coverage into the insurance policy because he, as a named insured, had not waived it. He also filed a C.R.C.P. 56(h) motion that asked the trial court to decide this issue as a· matter· of law.

¶ 20 While the driver's motion was pending, the insurer and the insurance agent filed summary judgment motions. (We note that the trial court granted the insurance agent's summary judgment motion. That decision is *not part of this appeal.*)

¶ 21 The insurer's summary judgment motion asked the trial court to conclude that, as a matter of law, the friend's written waiver of UM/UIM coverage bound the driver.

¶ 22 In resolving this motion, the court analyzed section 10–4–609 (1)(a). It concluded that, although the statute states that "the named insured may reject [UM/UIM] coverage in writing," the statute "does not state that the named insured must reject such coverage personally."

¶ 23 The court reasoned that this reading of the statute was "the most logical in light of agency law." Recognizing that "[a]n agent of the named insured may enter into a contract for insurance on behalf of the named insured," the court determined that the friend had acted as the driver's agent when she waived UM/UIM coverage.

¶ 24 The court noted that "an agent, operating on behalf of the principal, may act only within the scope of authority granted by the principal." The court added that the driver had not argued that the friend had exceeded her authority as an agent. The driver had argued instead that the statute prevented

anyone but the named insured from waiving UM/UIM coverage. The court responded to this argument by observing that the driver's position was "inconsistent with the … purpose of agency," which is to "permit one person to act on behalf of another, standing in their position." The court then held that "waiver by one named insured is binding on all named insureds."

¶ 25 But the court denied the insurer's motion for summary judgment. It reasoned that it needed to decide the factual question of whether the insurer's agent had made an offer of UM/UIM coverage to the friend that complied with the pertinent statute. (If the agent had not made such an offer, the insurer would have been obligated to pay the driver UM/UIM benefits.)

¶ 26 The court then, at the driver's request, bifurcated the trial on the issues of coverage and damages. After listening to testimony presented at a trial to the court on the issue of coverage, the court issued a written order. It found that (1) the insurer had made an offer of UM/UIM coverage to the friend that complied with the statute; and (2) the friend had rejected this offer. The court concluded that the driver did not have UM/UIM coverage in the insurance policy.

¶ 27 The court noted that this conclusion was based on its prior determination in the order denying the insurer's summary judgment motion. The court had reasoned there that "under Colorado law, one party to an insurance policy … can reject UM/UIM coverage and that rejection applies to everyone else covered by that policy." The insurer therefore was "not obligated to provide a separate explanation to, or obtain a separate rejection from" the driver.

¶ 28 The court then entered judgment for the insurer. The court, for obvious reasons, did not address the issue of damages.

## II. Legal Principles

### A. Standard of Review

¶ 29 "We review a judgment entered after a trial to the court as a mixed question of fact and law." *Jehly v. Brown*, 2014 COA 39, ¶ 8, 327 P.3d 351. "We defer to the court's credibility determinations and will disturb its findings of fact only if they are clearly erroneous and not supported by the record." *Lawry v. Palm*, 192 P.3d 550, 558 (Colo.App. 2008). "We review de novo the court's application of the governing legal standards." *Id.*

### B. Statutory Construction

¶ 30 Our "fundamental responsibility" in construing any statute is "to give effect to the General Assembly's purpose or intent in enacting [it]." *Martin v. People*, 27 P.3d 846, 851 (Colo.2001). We "liberally constru[e]" insurance statutes that seek to ensure "[ ]adequate compensation to victims of automobile accidents" so as to "further [their] remedial and beneficent purposes." *See Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1387 (Colo.1995) (construing the now-repealed Colorado Auto Accident Reparations Act, the basic purpose of which was nearly identical to that of Colorado's current UM/UIM statute).

¶ 31 When construing a statute, we "begin with [its] express language." *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1102 (Colo. 2011). We "constru[e] words and phrases according to grammar and common usage." *Id.* (internal quotation marks omitted). "We must give effect to every word of a statute, if possible, and cannot presume that the General Assembly used distinctions in language idly." *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 345 (Colo.1997). We are mindful that "our interpretation should give consistent, harmonious, and sensible effect to all parts of [the] statute." *Apodaca*, 255 P.3d at 1102–03 (internal quotation marks omitted).

¶ 32 But, "[i]f a statute appears ambiguous," then we "must proceed beyond a plain language analysis and consider legislative history, prior law, the goal intended to be achieved by the statute, and the consequences of a given construction of the statute in order to ascertain its meaning." *People v. Norton*, 63 P.3d 339, 345 (Colo.2003); *see also Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 448 (Colo.2005)("[T]he historical development of … a [comprehensive statutory] scheme can often shed light on the purposes

**714**

behind specific amendments."); *Lang v. Colo. Mental Health Inst.*, 44 P.3d 262, 264 (Colo. App.2001)(Where "the statutory provisions do not speak to the matter at issue, we interpret the statute to comport with what we conclude are the General Assembly's objectives.").

¶ 33 If a "statute establishes a general rule, subject to [an] exception[ ], we must construe the exception[ ] narrowly to preserve the primary operation of the general rule." *Brodak v. Visconti*, 165 P.3d 896, 898 (Colo.App.2007).

¶ 34 And it is a "well-established presumption that when the legislature amends a law, it intends to change that law." *Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 20, 327 P.3d 891; *see also Organ v. Jorgensen*, 888 P.2d 336, 338 (Colo.App.1994)("[I]f the General Assembly had intended that [a particular] exemption apply ... it could have left intact the prior version of the statute.").

¶ 35 We next apply these principles to determine the meaning of the phrase "named insured" in the context of this appeal.

### III. Meaning of the Phrase "Named Insured"

A. Section 10–4–609(1)(a)'s Plain Language

¶ 36 Section 10–4–609(1)(a) states:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person ... shall be delivered or issued ... unless coverage is provided therein or supplemental thereto ... for protection of persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... except that the named insured may reject such coverage in writing.

*See Shelter Mut. Ins. Co. v. Thompson*, 852 P.2d 459, 463 (Colo.1993)("[T]he General Assembly intended to enable an injured insured to recover for loss caused by an underinsured motorist to the same extent that the injured insured would recover for damages caused by an uninsured motorist.... Section 10–4–609 ... thus includes underinsured motorist coverage within the definition of uninsured motorist coverage....").

¶ 37 In other words, insurance companies must issue automobile insurance policies that provide a minimum level of UM/UIM coverage "except" when "the named insured" waives this coverage in writing. The statutory scheme also requires insurance companies, before issuing these policies, to "offer" to "the named insured" limits of UM/UIM coverage that are "equal to the insured's bodily injury liability limits." § 10–4–609(2). The statute does not define the phrase "the named insured."

¶ 38 We conclude that, in the context of this appeal, the phrase "named insured" is clear and unambiguous. We conclude, for the following reasons, that it means all persons whom the policy lists as "the named insured."

¶ 39 When we interpret statutes, "[t]he singular includes the plural, and the plural includes the singular." § 2–4–102, C.R.S. 2014. For example, Colorado courts have applied this principle to interpret the word

- "person" found in the self-defense statute to mean "persons," *People v. Jones*, 675 P.2d 9, 14 n. 10 (Colo. 1984);
- "sibling" in the phrase "the [deceased] person's 'sibling' " found in the restitution statute to include "siblings," *People v. Lane*, 2014 COA 48, ¶ 46, 2014 WL 1647659;
- "thing" in the phrase "thing involved" found in the theft statute to mean "things," *People v. Crawford*, 230 P.3d 1232, 1235 (Colo.App.2009);
- "motorist" in the phrase "an uninsured or underinsured motorist" found in the UM/UIM statute to mean "motorists," *Farmers Ins. Exch. v. Star*, 952 P.2d 809, 812 (Colo.App.1997); and
- "officer" in the phrase "arresting officer" found in the DUI statute to mean "officers," *Renck v. Motor Vehicle Div.*, 636 P.2d 1294, 1295 (Colo.App.1981).

¶ 40 This conclusion is consistent with Colorado decisions interpreting the phrase "named insured." "Because the identification of the named insured is of paramount importance to the insurer, ... courts have

held that the term 'named insured' has a restricted meaning and does not apply to any persons other than those named in the policy." *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.,* 39 P.3d 1205, 1207 (Colo. App.2001); *see also Mid–Century Ins. Co. v. Liljestrand,* 620 P.2d 1064, 1066 (Colo.1980) ("The named insured is the party who contracts for insurance and whose background and driving experience determines the premium which must be paid for the policy.").

¶ 41 Applying this authority, we conclude that "named insured" means all "persons ... named in the policy." *See D.C. Concrete Mgmt. Inc.,* 39 P.3d at 1207. We disagree with the insurer's contention that *McMichael v. Aetna Ins. Co.,* 878 P.2d 61, 63 (Colo.App.1994), *aff'd,* 906 P.2d 92 (Colo. 1995), supports a different conclusion. The division there did not reach the issue that we resolve here. Rather, it determined that the insurance company in that case had not made an affirmative offer of UM/UIM coverage, "[e]ven if [the division] were to *assume* that a named insured could partially reject UM/ UIM coverage, and could do so for others than that named insured...." *Id.* (emphasis added).

¶ 42 Courts in other jurisdictions have construed similarly worded waiver provisions, and have reached the same result. *See, e.g., Nationwide Ins. Co. v. Nicholas,* 868 So.2d 457, 459–63 (Ala.Civ.App.2003)(agreeing with other courts that have concluded that a written waiver of UM/UIM coverage by one named insured does not waive such coverage on behalf of all other named insureds); *Nationwide Mut. Ins. Co. v. Pasion,* 219 Conn. 764, 594 A.2d 468, 472 (Conn.1991)("To permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one."); *Preferred Risk Ins. Co. v. Cooper,* 638 N.W.2d 717, 719 (Iowa 2002)(rejecting argument that where named insured A relies on named insured B to obtain a policy, named insured A "only receives the insurance for which B arranges," because statute mandated UM/UIM coverage unless expressly rejected and "a person relying on

another to make him or her a named insured may reasonably expect that the coverages obtained will be those mandated by law"); *Plaster v. State Farm Mut. Auto. Ins. Co.,* 791 P.2d 813, 814 (Okla.1989)(where policy listed more than one "named insured," and statute permitted "the named insured" to reject UM/UIM coverage, rejection of UM/ UIM coverage by one named insured is not a rejection on behalf of other named insureds); *State Farm Mut. Auto. Ins. Co. v. Weisman,* 247 Va. 199, 441 S.E.2d 16, 19 (Va.1994)("We think that the [UM/UIM statute permitting 'the named insured' to reject otherwise mandatory UM/UIM coverage] requires a written rejection by all named insureds.... By obtaining a written rejection from each named insured, controversy about the [UM/UIM] coverage available to an insured will be eliminated."), *superseded by statute,* VA Code Ann. § 38.2–2206(A), *as recognized in Atkinson v. Penske Logistics, LLC,* 268 Va. 129, 596 S.E.2d 518, 520 (Va.2004); *see also* 2 William J. Schermer & Irvin E. Schermer, *Automobile Liability Insurance* § 19:8 (4th ed. 2004)(Where a statute mandates UM/ UIM coverage unless "the named insured" rejects it, "an appropriate interpretation of the wording, in light of the ambiguities invited by a multiple-named insured situation, is that rejection by one named insured, unless he is authorized to act for others, applies only to himself and not the others."); *but see, e.g., Messerly v. State Farm Mut. Auto. Ins. Co.,* 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 150–52 (1996)(husband's rejection of "higher" than the minimum UM/UIM limits was binding on wife where both were named insureds under the policy, because statute was silent as to whom insurance company was required to offer higher UM/UIM limits, and the statute had since been amended to specify that the "applicant" must be offered, and may reject, higher UM/UIM limits); *Hall v. Allstate Ins. Co.,* 53 Wash. App. 865, 770 P.2d 1082, 1084 (1989)(where both husband and wife were named insureds and statute permitted rejection of UM/UIM coverage by "the named insured," husband's rejection was binding on wife because of the state's community property laws, and because the statute had since been amended to allow a spouse to reject UM/UIM coverage

on behalf of another spouse); 9A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 122:50 (3d ed. 2012)("When a policy of insurance specifies more than one individual as the 'named insured,' a written rejection of the uninsured motorist coverage executed by one of the named insureds is ineffective as a rejection of said coverage on behalf of all named insureds.... However, the growing trend is that a rejection of [UM/UIM] coverage ... by one named insured is binding on all named insureds...."). We note that *Couch* cites cases involving statutes that are worded differently than Colorado's statute in that they permit rejection of UM/UIM coverage by "a named insured," "the first named insured," or "any named insured."

### B. The Result Would Be the Same Even If the Phrase "Named Insured" Were Ambiguous in This Context

¶ 43 But what if we were to conclude, as the insurer contends, that the phrase "named insured" is ambiguous because it could refer to any one person who is named in the insurance policy or to all such persons? We would reach the same result.

### 1. The Evolution of Section 10–4–609(1)(a)

#### a. 1965

¶ 44 Legislation requiring insurance companies to include uninsured motorist coverage in all automobile liability policies was first enacted in Colorado in 1965. *See* Ch. 91, sec. 2, § 72–12–19, 1965 Colo. Sess. Laws 334; *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 906 (Colo.1992).

¶ 45 In this legislation, the only time that an insurance company could issue a policy without uninsured motorist coverage was "where *any insured named in the policy*" rejected it. 1965 Colo. Sess. Laws at 334 (emphasis added). *See also* Ch. 69, sec. 11, § 10–4–609, 1979 Colo. Sess. Laws 377 (also including this language).

¶ 46 Since that time, our legislature "has acted several times" to "expand" UM/UIM coverage. *Apodaca*, 255 P.3d at 1106. The following statutory expansions of uninsured motorist coverage are pertinent to this appeal.

#### b. 1983

¶ 47 In 1983, the legislature repealed and re-enacted section 10–4–609. The re-enacted law still required insurance companies to issue policies with uninsured motorist coverage, subject to waiver. Ch. 92, sec. 1, § 10–4–609(1), 1983 Colo. Sess. Laws 454. But it expanded the definition of "[u]ninsured motorist coverage" to include *under* insured motorist coverage. *Id.*, § 10–4–609(4), 1983 Colo. Sess. Laws at 455. And it required insurance companies, "[p]rior to the time the policy is issued," to "offer" to "the named insured" the "right to obtain higher limits of [UM/UIM] coverage." *Id.*, § 10–4–609(2), 1983 Colo. Sess. Laws at 454.

¶ 48 In doing so, it capped the limits of UM/UIM coverage that an insurance company was required to "provide" to an insured. *Id.* The most UM/UIM coverage that an insurance company was required to pay an insured who was injured in an accident with an uninsured or underinsured motorist was "the insured's bodily injury liability limits" or "[$100,000] per person and [$300,000] per accident, whichever is less." *Id.*

¶ 49 Significantly, the legislature also changed the language of the waiver provision. Instead of retaining the language that allowed "*any* insured named in the policy" to waive UM/UIM coverage, it changed the language to permit "*the* named insured" to waive UM/UIM coverage. *Id.*, § 10–4–609(1), 1983 Colo. Sess. Laws at 454 (emphasis added). This change was discussed in the legislature during the second reading of the bill that amended section 10–4–609(1). A senator explained that one purpose of the bill was to "ask that underinsured motorist insurance be offered to *each* one of the insureds." (Emphasis added.)

#### c. 2007

¶ 50 The legislature amended section 10–4–609(2)'s "offer" requirement in 2007. The amendment required insurance companies to "offer" UM/UIM coverage to "the named insured" in "an amount equal to the insured's bodily injury liability limits." Ch. 413, sec. 2, § 10–4–609(2), 2007 Colo. Sess. Laws 1921–

22. It removed the $100,000/$300,000 cap on the amount of UM/UIM coverage that insurance companies were required to "provide." *Id.* And it prohibited "[t]he amount of [UM/UIM] coverage available" from being "reduced by a setoff from ... other uninsured or underinsured motor vehicle insurance." *Id.*, sec. 1, § 10–4–609(1)(c), 2007 Colo. Sess. Laws at 1921.

¶ 51 These changes have allowed insureds to aggregate, or "stack," UM/UIM coverage from more than one policy in order to more fully indemnify them for their damages. *See* Wendelyn K. Walberg, *New Uninsured Motorist Legislation Changes the Rules*, 37 Colo. Law. 67, 67–68 (Sept. 2008); *see also Apodaca*, 255 P.3d at 1106 (discussing some of the effects of the 2007 amendments).

## 2. Legislative Policies Behind UM/UIM Coverage

¶ 52 When first enacted, the uninsured motorist statute's declared purpose was to "assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *Parfrey*, 830 P.2d at 906 (quoting Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333).

¶ 53 Section 10–4–609(1)(a) "assures that motorists who have purchased automobile ... liability insurance can obtain compensation from their own insurer in the event they are injured by a negligent driver who lacks adequate liability insurance." *Apodaca*, 255 P.3d at 1103. It "provide[s] a member of the driving public with an opportunity to make an informed decision on an appropriate level of [UM/UIM] coverage......" *Parfrey*, 830 P.2d at 912.

¶ 54 "[B]y enacting section 10–4–609(1)," the legislature "intended to protect the public from the devastating financial loss that a traffic accident victim can incur." *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 98 (Colo. 1995)(declining to adopt an interpretation of the UM/UIM statute that would allow "[c]onsumers unaware of or unschooled in the vagaries of insurance contracts" to be "misled into believing they have purchased coverage when in reality they have not").

¶ 55 With these principles in mind, we conclude that "[t]he legislative intent and policy" behind Colorado's UM/UIM statute "are to maximize, not minimize insurance coverage...." *Cf. Smith*, 902 P.2d at 1387–88 (concerning the now-repealed Colorado Auto Accident Reparations Act). And because section 10–4–609(1)(a) "compels UM/UIM coverage for all those covered under the liability provisions of an automobile insurance policy," courts that are "faced with insurance policies that violate mandatory coverage requirements" will "read those requirements into the policy." *McMichael*, 906 P.2d at 101; *see also Apodaca*, 255 P.3d at 1104.

## 3. Analysis

¶ 56 If a statute is ambiguous, we may "consider legislative history ... [and] the goal intended to be achieved by the statute ... in order to ascertain its meaning." *Norton*, 63 P.3d at 345. Those factors lead us to conclude that the phrase "named insured" in this context refers to all named insureds.

¶ 57 *The legislative history of section 10–4–609(1)(a) supports our* conclusion. *See Norton*, 63 P.3d at 345; *Frank M. Hall & Co.*, 125 P.3d at 448. Before 1983, the statute allowed insurance companies to issue policies without UM/UIM coverage where "any" named insured waived the coverage. If the legislature wished to retain that result, it could have retained that language. *See Organ*, 888 P.2d at 338. But because the legislature changed that language, we conclude that it intended to change the result and to narrow the circumstances under which an insurance company could issue a policy without UM/UIM coverage. *See Daniel*, ¶ 20; *see also Apodaca*, 255 P.3d at 1106 (noting that since first enacting the uninsured motorist statute in 1965, the legislature has continued to "expand" UM/UIM coverage).

¶ 58 The modifier "any" means "either 'one or more' or 'one, no matter what one.'" *People v. Renander*, 151 P.3d 657, 661 (Colo. App.2006) (quoting *Webster's Third New International Dictionary* 97 (1976)). In the context of this case, "any" means that a single named insured, out of two or more,

had the authority to waive UM/UIM coverage for all named insureds. *See id.*

¶ 59 The definite article "the" "particularizes the subject which it precedes. It is a word of limitation...." *Brooks v. Zabka,* 168 Colo. 265, 269, 450 P.2d 653, 655 (1969). Recognizing that the phrase "named insured" contemplates the prospect that there can be more than one such person, the substitution of "the" for "any" indicates that the legislature intended that all those who are named insureds must waive UM/UIM coverage.

¶ 60 And the statement at the bill reading by a senator discussing the 1983 amendment indicated that one of its purposes was to "ask that underinsured motorist insurance be offered to *each* one of the insureds." (Emphasis added.)

¶ 61 *The legislative policies for UM/ UIM coverage support our conclusion.* If an insurance policy lists more than one person as "named insured," we conclude that section 10–4–609(1)(a), read in harmony with the policies and purposes behind the statutory scheme, requires that, in a case such as this one, (1) all such persons must waive UM/ UIM coverage; and (2) if one or more of them do not waive such coverage, then we shall read such coverage into the policy for each named insured who did not waive it.

¶ 62 First, the purpose of section 10–4–609(1)(a) is to "protect" insureds who are "injured by ... negligent driver[s] who lack[ ] adequate liability insurance." *Apodaca,* 255 P.3d at 1103; *see Parfrey,* 830 P.2d at 912–13; *see also Martin,* 27 P.3d at 851 ("Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute."). The way that the legislature has chosen to protect insureds, most of whom are "unaware of or unschooled in the vagaries of insurance contracts," *see McMichael,* 906 P.2d at 98, is to mandate that all policies include UM/UIM coverage. *See* § 10–4–609(1)(a). The only exception that the legislature has made to this rule is if "the named insured" has expressly rejected UM/ UIM coverage "in writing," *see id.* after having "an opportunity to make an informed

decision" about it, *see Parfrey,* 830 P.2d at 912–13; *see also* § 10–4–609(1)(a), (2).

¶ 63 Second, because section 10–4–609(1)(a)'s waiver provision is an "exception" to the "general rule" that every policy must include UM/UIM coverage, we must construe it "narrowly" in order "to preserve the primary operation of the general rule." *See Brodak,* 165 P.3d at 898.

¶ 64 Third, "[t]he legislative intent and policy" behind Colorado's UM/UIM statute "are to maximize, not minimize insurance coverage." *Cf. Smith,* 902 P.2d at 1387.

¶ 65 The policy here listed both the driver and the friend as "the named insured." This appeal therefore involves two persons who "contract[ed] for insurance" and who were "named in the [insurance] policy." And only one of them waived UM/UIM coverage. We therefore conclude that, under section 10–4–609(1)(a), the driver—a named insured—did not waive UM/UIM coverage.

¶ 66 But this conclusion does not end our inquiry. We must decide whether common law agency principles authorized the friend to waive the driver's UM/UIM coverage without his knowledge. We resolve that issue next.

### IV. Common Law Agency

¶ 67 In construing section 10–4–609(1)(a) as we have above, we make clear that we do not abrogate all common law agency principles in this context. *See* § 2–4–211, C.R.S. 2014 (absent "repeal[ ]" of common law principles "by legislative authority," those principles shall apply). We conclude instead that, because section 10–4–609(1)(a) requires an *express* rejection of UM/UIM coverage by each named insured, the statute necessarily prohibits one named insured acting as an agent for another from waiving UM/UIM coverage on the other's behalf *unless* the agent acts with express actual authority from the other.

### A. Legal Principles

¶ 68 Generally, a principal is "bound by an agent's actions" if the agent acts with either "actual" or "apparent" authority, "regardless of whether the principal has knowl-

edge of the agent's conduct." *Citywide Banks v. Armijo,* 313 P.3d 647, 652 (Colo. App. 2011); *see also Willey v. Mayer,* 876 P.2d 1260, 1264 (Colo. 1994).

¶ 69 "Actual" authority is "that authority which is in fact given to an agent" expressly or impliedly. *Citywide Banks,* 313 P.3d at 652. "Express [actual] authority" exists when "the principal directly states that its agent has the authority to perform a *particular* act on the principal's behalf." *Id.* (emphasis added).

¶ 70 "Implied [actual] authority . . . embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." *Willey,* 876 P.2d at 1264 (internal quotation marks omitted). "Implied authority is actual authority circumstantially proved." *Citywide Banks,* 313 P.3d at 652.

¶ 71 An agent may act with implied actual authority if "the conduct of the principal has been such as to justify the . . . finding that the agent had actual authority to do what he did." *Moore v. Switzer,* 78 Colo. 63, 65, 239 P. 874, 875 (1925). One way to prove actual authority is to provide "evidence of [the principal's] acquiescence with knowledge of the agent's acts, and such knowledge and acquiescence may be shown by evidence of the agent's course of dealing." *Cooley v. Eskridge,* 125 Colo. 102, 110, 241 P.2d 851, 855 (1952).

¶ 72 "Whether an agent has been given authority to act on behalf of a principal is an issue of fact." *Citywide Banks,* 313 P.3d at 653. But, "if the underlying facts are undisputed, fact finding is not required, and the legal effect of those facts constitutes a question of law." *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo.App.2004).

¶ 73 (We note that the insurer did not argue below, and it does not argue here, that the friend acted with apparent authority. The trial court did not make any findings in that regard, either. We therefore will not consider how that contention would affect our analysis. *See Fry v. Lee,* 2013 COA 100, ¶ 47, 2013 WL 3441546 (declining to consider an argument not raised in the district court or in the opening brief)).

**B. Analysis**

¶ 74 The insurer argues that, if one person has the authority to enter into an insurance contract on behalf of another, the first person *necessarily* has the authority to reject UM/ UIM coverage on the other's behalf. We disagree for the following reasons.

¶ 75 *Express Actual Authority.* Although nothing in Colorado's insurance code prohibits one person from naming other persons as "the named insured" under an automobile liability policy, we have concluded that section 10–4–609(1)(a) requires that each person listed as "the named insured" must *expressly* waive UM/UIM coverage. Section 10–4–609(1)(a) thus necessarily limits the ability of an agent to waive UM/UIM coverage, but it does not limit an agent's ability to procure an insurance policy that includes UM/UIM coverage.

¶ 76 We conclude that one named insured acting as an agent can waive UM/ UIM coverage for another named insured only with express actual authority to do so. But there are no facts in this record that show that the driver gave the friend such authority. For example, there is no evidence of the driver's express acquiescence in the friend's waiver of UM/UIM coverage on his car. *See Cooley,* 125 Colo. at 110, 241 P.2d at 855.

¶ 77 And, as indicated above, the insurer does not make such a contention. Rather, it contends that the friend had authority to waive the driver's UM/UIM coverage simply because she had authority from him to buy the insurance policy.

¶ 78 We conclude that, to the degree these facts are undisputed, "fact finding is not required, and the legal effect of those facts constitutes a question of law." *Rush Creek Solutions, Inc.,* 107 P.3d at 406. We thus further conclude that, as a matter of law, the friend did not have actual express authority from the driver to waive UM/UIM coverage on his car.

¶ 79 And to the extent that there is any dispute about these facts, our careful review of the record has not uncovered any facts that indicate that the driver gave the friend express actual authority to waive UM/UIM coverage on his car. *See Van Gundy v. Van Gundy,* 2012 COA 194, ¶ 12, 292 P.3d 1201 ("We review a court's factual findings following a trial to the court only for clear error. A court's factual findings are clearly erroneous only if there is no support for them in the record." (citations omitted)).

¶ 80 *Implied Actual Authority.* We conclude that, if we were to interpret section 10–4–609(1)(a) to allow one named insured acting as another's agent to waive UM/UIM coverage with implied actual authority, then we would (1) dilute the intended effect of the statute; and (2) circumvent the statute's requirement that all named insureds expressly waive UM/UIM coverage. We reach this conclusion because

- section 10–4–609(1)(a) requires that all named insureds expressly waive UM/UIM coverage after having "an opportunity to make an informed decision," *Parfrey,* 830 P.2d at 912–13 ("[A] n insurer has a one-time duty to inform an insured in a reasonable manner calculated to permit the insured to make an informed decision on whether to purchase UM/UIM coverage offered by the insurer . . . .");
- waiving UM/UIM coverage is not "incidental," "necessary," "usual," or "proper" to "accomplish or perform" the objective of buying an automobile insurance policy, *see Willey,* 876 P.2d at 1264 (internal quotation marks omitted); and
- waivers of UM/UIM coverage are, instead, an exception to the general rule that such coverage be included in all policies, *see* § 10–4–609(1)(a).

¶ 81 *Other Jurisdictions.* There is a split of authority concerning which common law agency principles should apply in this context. *See Restatement (Third) of Agency* § 4.07 n.b (2006)(noting a split in authority on this issue, but not offering an opinion about which side is more legally sound).

¶ 82 Some courts have concluded that one named insured may only waive UM/UIM coverage for another if acting with express actual authority. *See, e.g., Nationwide Mut. Ins. Co. v. Powell,* 292 F.3d 201, 206 (4th Cir. 2002)(The insurance company's "presentation of the [UM/UIM] form to [one named insured] clearly did not intelligibly advise [the other named insured] about [UM/UIM] coverage."); *State Farm Fire & Cas. Co. v. Garrett,* 783 N.E.2d 329, 335 (Ind.Ct.App.2003)(rejecting argument that one named insured has agency authority to reject UM/UIM coverage on behalf of another by virtue of his authority to procure the policy because "once insurance coverage has been procured, Indiana law defines the contours around which certain insurance coverage may be rejected" (internal quotation marks omitted)); *Shirley v. Centennial Ins. Co.,* 829 So.2d 593, 597 (La.Ct.App. 2002)(where board representative was authorized by board to obtain insurance policy, but representative rejected UM/IM coverage without board's knowledge, rejection was ineffective because the board "was not afforded the opportunity to make a meaningful and informed selection of [UM/UIM] coverage" and did not authorize the representative to sign the rejection form); *Braden v. State Farm Mut. Auto. Ins. Co.,* 92 Ohio App.3d 777, 637 N.E.2d 109, 110–11 (1994)(noting that Ohio's UM/UIM statute "altered common-law contract and agency principles" in that UM/UIM coverage "can be eliminated" from a policy *"only* by the express rejection of that provision by the insured," so the named insured plaintiff had UM/UIM coverage because she "did not expressly authorize" the other named insured to waive it (quoting in part *Abate v. Pioneer Mut. Cas. Co.,* 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429 (1970))); *Weisman,* 441 S.E.2d at 18–19 (insurance company did not prove "express agency"), *superseded by statute as recognized in Atkinson,* 596 S.E.2d at 520 (in 1995, legislature amended UM/UIM waiver statute *from* stating "the insured" *to* stating "any one named insured").

¶ 83 Other courts have concluded that such waivers may be made when one named insured acts with implied actual authority or apparent authority. *See, e.g., Tucker v. Gov't Emps. Ins. Co.,* 2014 WL 1395946 *2–4 & n. 2 (D.Colo. Apr. 10, 2014) (unreported decision)

(declining to decide the "open question in Colorado" whether "a single named insured may reject UM/UIM coverage for other named insureds," but finding that one of the named insureds "acted with apparent authority to reject [UM/UIM] coverage on behalf of" another named insured); · *Acquesta v. Indus. Fire & Cas. Co.*, 467 So.2d 284, 285 (Fla.1985) ("[W]ife was vested by her husband with apparent authority to ... reject [UM/UIM] coverage" where she had "apparent authority ... to obtain" the policy.); *State Farm Mut. Auto. Ins. Co. v. Noble*, 854 N.E.2d 925, 931–33 (Ind.Ct.App.2006) (concluding that the husband did not act with apparent authority to bind his wife to waiver of UM/UIM coverage, but a question of fact remained as to whether he had implied authority to do so); *Ridgeway v. Shelter Ins. Cos.*, 22 Kan.App.2d 218, 913 P.2d 1231, 1235 (1996) (The girlfriend of named insured had "implied authority" to reject UM/UIM coverage on his behalf where he "placed no limitations or restrictions upon her" and "deferred the coverage specifics to [her]·just as he had deferred the handling of other household financial matters to her."); *Bouffard v. State Farm Fire & Cas. Co.*, 162 N.H. 305, 27 A.3d 682, 686–87 (2011)(Because New Hampshire's UM/UIM statute did "not clearly indicate any legislative intent to alter common law agency principles," the record supported the trial court's conclusion that the husband had "implied actual authority" to reject UM/UIM coverage on behalf of his wife when the wife authorized him to make decisions about the insurance application.).

¶ 84 We are persuaded by the decisions from other jurisdictions holding that one named insured must have express actual authority to waive another's UM/UIM coverage. These decisions give fuller effect to the legislative purposes behind section 10–4–609(1)(a) that we have discussed above. *Cf. Eurpac Serv., Inc. v. Republic Assistance Corp.*, 37 P.3d 447, 451 (Colo.App.2000)("We find the analysis employed by [other] courts holding that actual knowledge establishes" an exception to a section of the Uniform Commercial Code persuasive because such analysis "gives full effect to the purpose of the statute...."); *Lowe v. Braden*, 29 Colo.App.

54, 57, 477 P.2d ·481, 482 (1970)("[T]hose authorities which give effect to the legislative intent of the statute ... are the better reasoned decisions.").

### V. Conclusion and Remand Order

¶ 85 We conclude that the trial court erred when it determined that section 10–4–609(1)(a) did not require that either (1) each named insured must waive UM/UIM coverage personally, or (2) one named insured could only waive UM/UIM coverage as another's agent with express actual authority. We further conclude that the record does not contain any evidence to establish that the driver gave the friend express actual authority to waive such coverage. *Cf. Rush Creek Solutions, Inc.*, 107 P.3d at 406.

¶ 86 We reverse the trial court's judgment in favor of the insurer. We remand to the trial court to .

(1) enter judgment for the driver on the issue of coverage, *see id.* (We may address an otherwise factual issue as "a question of law" without "a remand to the trial court" for factual findings where the parties "point to no specific ·facts that [they] contend[ ] are in dispute, do[ ] not assert that credibility determinations must be made, and do[ ] not assert that any additional facts could be developed upon remand." (citing *Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580 (Colo. 1995)));

(2) read UM/UIM coverage into the driver's policy in an amount equal to the bodily·injury liability limits of the policy, *see McMichael*, 906 P.2d at 101; *Apodaca*, 255 P.3d at 1104; and

(3) conduct a trial on the issue of damages.

¶ 87 Because we conclude that UM/UIM coverage must be read into the policy, we do not reach the other issues that the driver raises on appeal.

¶ 88 The judgment ·is reversed, and the case is remanded for the additional proceedings that we have described above.

JUDGE NAVARRO and JUDGE ROY * concur.